**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

—————————————————————————
                                                    )
UNITED STATES OF AMERICA, ex rel.                   )
JOHN M. GREABE,                                     )
                                                    )
            Plaintiffs,                             )
                                                    )
       v.                                           )    Civil Action No. 04-11355-MEL
                                                    )
BLUE CROSS BLUE SHIELD ASSOCIATION                  )
and                                                 )
ANTHEM BLUE CROSS BLUE SHIELD                       )
OF NEW HAMPSHIRE,                                   )
                                                    )
            Defendants.                             )
—————————————————————————)

**DEFENDANTS' JOINT OPPOSITION TO RELATOR'S**
**MOTION TO FILE SECOND AMENDED COMPLAINT**

Defendants Blue Cross Blue Shield Association ("BCBSA") and Anthem Blue Cross

Blue Shield of New Hampshire ("ANH") (collectively, "Defendants") respectfully oppose

the relator John M. Greabe's ("the Relator") Motion to File Second Amended Complaint.

## ARGUMENT

Although the Relator has already amended his complaint once, he now seeks to do so

again in an attempt to avoid the fatal flaws Defendants demonstrated in their recent motion to

dismiss.  The Relator's attempt should be rejected as futile, since the proposed Second

Amended Complaint remains subject to dismissal for the two reasons discussed in

Defendants' Memorandum in Support of Their Motion to Dismiss.  First, the Relator's

lawsuit is precluded by the exclusive remedies in the Federal Employees Health Benefits Act

("FEHBA"). The Relator's new Complaint does not change the basic fact that the Relator's lawsuit would interfere with OPM's broad and exclusive authority to regulate FEHBA carriers, and nothing in the Relator's Memorandum of Law in Opposition to Joint Motion to Dismiss Amended Complaint and in Support of Motion to File Second Amended Complaint (Doc. No. 29) (hereinafter, "Relator's Memo") suggests otherwise. *See* Section I below.

Second, the proposed Second Amended Complaint still fails to properly plead a False Claims Act ("FCA") violation. Although the proposed Complaint attempts to remedy some – but not all – of Relator's Rule 9(b) problems, it simultaneously moves farther away from making out a valid FCA claim. In particular, the proposed complaint explicitly alleges that the United States Office of Personnel Management ("OPM") already knew about the alleged pattern of improper claims denial, thereby negating any possibility of Defendants' claims being false. In addition, the proposed Complaint demonstrates in other ways that at most, this is a contractual issue between OPM and BCBSA, not a claim of fraud. *See* Section II below.

Aside from the futility of the newly proposed Complaint, the Relator's motion to amend should be denied for another reason: the policies behind Rule 9(b) and the FCA prohibit a relator from attempting to avoid a motion to dismiss by amending his or her complaint with new facts learned along the way. *See* Section III below.[1]

---

[1] Defendants note that the Relator incorporates the entirety of his Opposition to Defendants' Motion to Dismiss as grounds for leave to again amend his complaint. In light thereof, Defendants respond as necessary to points asserted by the Relator in his Opposition.

I.    **THE RELATOR'S PROPOSED SECOND AMENDED COMPLAINT IS PRECLUDED BY THE EXCLUSIVE REMEDIES PROVIDED UNDER THE FEDERAL EMPLOYEES HEALTH BENEFITS ACT**

Although the Relator's proposed Second Amended Complaint adds a few more factual particulars, its basic premise remains the same.  Accordingly, it is, like the First Amended Complaint, precluded by the exclusive remedies under FEHBA.  *See* Memo. in Support of Defs' Joint Mtn. to Dismiss Am. Compl. (Attach. 1 to Doc. No. 25) (hereinafter, "Defs' Memo") at 10-15.  If anything, the Relator's latest filing only serves to support that conclusion.

As previously noted, there are two separate aspects of FEHBA that preclude the Relator's FCA lawsuit.  Defs' Memo at 13-14.  First, it is precluded by the exclusive authority granted to OPM to adjudicate FEHBA benefit disputes.  Second, it is precluded by OPM's broad authority to police FEHBA carriers.  *See* Subsections A. and B. below.  Before proceeding, however, we address the Relator's unsupported claim that it is really the enrollees' money, and not the Government's, that is at stake when FEHBA claims are paid.

In an effort to reduce the importance of OPM's control over FEHBA benefit disputes and the policing of FEHBA carriers, the Relator disputes the fact that "it is the United States' money that is at stake every time a FEHBA claim is processed" (Relator's Memo at 7 n.6 (*quoting* Defs' Memo at 10)), claiming instead that "it is the enrollees' money" (Relator's Memo at 7 n.6 (emphasis in original)).  The Relator is wrong.  Indeed, the Relator acknowledges that the majority of the money used to pay FEHBA claims is supplied directly by the United States.  Proposed Second Am. Compl. ¶ 24.  More importantly, *all* money in the Government's Federal Employees Health Benefits Fund – whether originally contributed

by the Government or by federal employees – belongs to the United States.  Any excess at

the end of the year is placed in a reserve within the U.S. Treasury and can only be used as

OPM sees fit to defray future rates, reduce future government and employee contributions,

increase plan benefits, or refund monies to the government and plan enrollees.  *See* 5 U.S.C.

§ 8909(b); 5 C.F.R. § 890.503(c)(2); Proposed Second Am. Compl. ¶ 25.  Under these

undisputed facts it can hardly be said that "it is the enrollees' money."

Moreover, if the Relator's claim that the money belongs to the enrollees and not the

federal Government were true, his lawsuit could never make out a FCA violation because the

FCA imposes liability only for fraud against the Government.  One court recently engaged in

a thorough analysis of the boundaries of the FCA to determine whether the Act could apply

to fraudulent claims submitted to the Coalition Provisional Authority in Iraq.  *United States*

*ex rel. DRC, Inc. v. Custer Battles, LLC*, 376 F. Supp. 2d 617, 635-41 (E.D. Va. 2005).  After

discussing the Supreme Court and other precedent on the issue, the court concluded that the

FCA

> requires a "claim," or a request or demand for payment that if paid would
> result in economic loss to the government fisc, i.e. a request for payment from
> government funds; it does not extend to cases where the government acts
> solely as a custodian, bailee, or administrator, merely holding or managing
> property for the benefit of a third party.

*Id*. at 641.  Here, the Relator himself alleges that the same Government fund is used to pay

both FEHBA benefit claims and the Defendants' claims for the service charge.  Proposed

Second Am. Compl. ¶ 25.  If the Relator is correct that this "is the enrollees' money," then no

FCA violation can exist.

In addition, the manner in which rates are set for the Service Benefit Plan also shows

that the Government's money is at issue, not just currently, but in the future.  As the Relator continues to note, the Service Benefit Plan is an experience-rated plan, meaning that premiums are set on the basis of prior claims experience.  *See* Proposed Second Am. Compl. ¶ 26.  Thus, all else being equal, the greater the costs incurred under the Service Benefit Plan in a particular year, the higher the premiums will be in following years – both for the Government and, to a lesser extent, enrollees.  *See* 5 U.S.C. §§ 8902(i), 8903(l); 48 C.F.R. §§ 1602.170-6, 1615.802(a).  Because of the impact on the federal fisc, cost-containment is one of the primary goals under FEHBA.  *See National Fed'n of Fed. Employees v. Devine*, 679 F.2d 907, 910 (D.C. Cir. 1981).

The Relator's lawsuit would essentially hold Defendants liable for *not* paying claims for speech therapy associated with mental disorders and would force Defendants to pay such claims in the future or risk FCA liability.  Because of the experience-rating, paying such claims would not only immediately reduce the amount of the Government's Federal Employees Health Benefits Fund, but might also increase the premiums the Government (and to a lesser extent enrollees) would have to pay in future years.  The Government's financial interest in all FEHBA plans is one of the key reasons Congress gave OPM such broad authority.  *See, e.g.*, *Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 44 (D.D.C. 1996) ("OPM must maximize the benefits flowing from the federal employee health plans while minimizing the cost to the government"); *see also id*. at 42-43 (discussing OPM's broad authority).  Because it is the Government's money at stake, it is OPM – and only OPM – that should determine whether any claims for speech therapy associated with mental disorders should be paid under the FEHBA plan.

A.      **The Relator's Proposed Second Amended Complaint Is Precluded by OPM's Exclusive Authority Over Benefit Disputes**

In an effort to rebut that OPM has exclusive authority to adjudicate benefit disputes between a FEHBA carrier and an enrollee (Defs' Memo at 5-6), the Relator repeatedly accuses Defendants of "[m]iscasting this case as an action seeking improperly denied health benefits."  Relator's Memo at 1; *see also id*. at 2, 7.  Thus, the Relator claims, Defendants' arguments about OPM's exclusive power to resolve FEHBA benefit disputes are irrelevant. *Id*. at 7.

The Relator misses the point entirely.  Contrary to his assertion, Defendants do not "see this action . . . as one seeking health insurance benefits."  *Id*.  Defendants fully recognize that the crux of the Relator's claim is that Defendants did not provide services *to OPM* as called for in the contract.  *See, e.g.*, Defs' Memo at 9, 13.  That having been said, OPM's exclusive power to resolve all benefit disputes still establishes that the Relator's claims cannot survive.

Even though this case is not literally for denied health benefits under FEHBA, its resolution requires a determination about whether a FEHBA carrier properly denied enrollees' claims under the Service Benefit Plan.  The Relator's entire proposed Second Amended Complaint is dependent upon the contention that, in cases like the Relator's, Defendants should have been regularly paying claims for speech therapy associated with mental disorders.  Although Defendants dispute this allegation, what is important for the purposes of this motion is that under FEHBA this type of dispute must be resolved in the first instance by OPM on a case by case basis.  Because of this exclusive mechanism for resolving FEHBA benefit disputes, the Relator's FCA action cannot lie.  *See United States ex rel.*

*Windsor v. DynCorp, Inc.*, 895 F. Supp. 844, 851-852 (E.D. Va. 1995), discussed at Defs'
Memo at 13.

In accordance with this statutory scheme, courts have consistently deferred to OPM's
exclusive power even when the plaintiff sought remedies other than FEHBA benefits. For
example, in *Kobleur v. Group Hospitalization and Medical Services, Inc.*, 954 F.2d 705 (11th
Cir. 1992), the plaintiff sued a FEHBA carrier seeking, among other things, the payment of
denied benefits and a declaration that the carrier had "breached the plans' terms and its
fiduciary duties." *Id*. at 707. Because of FEHBA's exclusive remedy for benefit disputes,
the court dismissed the plaintiff's claim for benefits on the grounds that she failed to exhaust
OPM's administrative remedy. *Id*. at 711-12. More importantly for present purposes, the
plaintiff also argued that her other claims of breach of the plan and breach of fiduciary duties
should go forward "because OPM does not have the authority to decide" those types of
claims. *Id*. at 713. Even though those claims were not literally for FEHBA benefits, the
court rejected that argument, holding that "[t]here could be no breach of either the plan or
fiduciary duties unless Blue Cross was in fact obligated to cover the[] claims [at issue].
Resolution of this dispute thus requires an interpretation of the plan – a task specifically
delegated to OPM under FEHBA." *Id*. at 713.

Resolution of the instant case likewise requires interpreting a FEHBA plan to
determine whether it covers speech therapy associated with mental disorders and whether
such therapy is "medically necessary" as that term is used in the plan. Because that task has
been specifically delegated to OPM, "responsibility for resolving [this] dispute[] rests not
with the courts, but with" OPM. *DynCorp, Inc.*, 895 F. Supp. at 851.

The Relator again misses the point when he tries in a footnote to distinguish *DynCorp* by arguing that OPM does not have exclusive jurisdiction over benefit disputes because OPM's decisions are subject to judicial review pursuant to 5 C.F.R. § 890.107(c). Relator's Memo at 8 n.7.[2] It makes no difference whether OPM's decisions are subject to judicial review. What matters is that Congress plainly intended OPM, and not the courts, to be the primary decision maker regarding all FEHBA benefit disputes.

That intent is expressed in a number of ways. First, any review of a FEHBA carrier's benefit determination must be made by OPM in the first instance. No court actions are permitted at all unless and until OPM review is sought and completed. 5 C.F.R. § 890.107(d)(1). Second, judicial review of OPM's decisions are solely under the deferential "arbitrary and capricious" standard of the Administrative Procedure Act ("APA"). *See* Defs' Memo at 5-6. Just the other day, the Supreme Court emphasized, in a summary reversal of a lower court, that a reviewing court's role is very limited on judicial review and that it is *not* to substitute its judgment for that of the agency. *Gonzales v. Thomas*, No. 05-552, 547 U.S. ___, slip op. at 3 (Apr. 17, 2006). Third, the federal Government has a unique interest in all FEHBA benefit disputes. The fact that the Government's money is at stake in each such benefit determination is only one reason for this. OPM also has "expertise in this area," and has the "ability to take a broad, national view when it interprets plans which serves the function of ensuring consistent, nationwide application." *Muratore v. United States OPM*, 222 F.3d 918, 923 (11th Cir. 2000); *see also Doe v. Devine*, 703 F.2d 1319, 1326-31 (D.C.

---

[2] As discussed below, the Relator's claim is also contradicted by the allegations in his proposed Second Amended Complaint. *See* Proposed Second Am. Compl. ¶ 84.

Cir. 1983) (discussing the competing interests that OPM must balance, including the Government's interest in cost containment as well as the interests of subscribers and insurers).

For these reasons, it is evident that the purpose of the FEHBA scheme is to place decisions regarding benefits exclusively in OPM's hands, subject only to narrow APA review.[3]  *See* 5 U.S.C. § 8902(j) ("Each contract . . . shall require the carrier to agree to pay for or provide a health service or supply in an individual case if *the Office* finds that the employee . . . is entitled thereto under the terms of the contract.") (emphasis added).  Indeed, the Fourth Circuit has concluded that "OPM has *final* authority over coverage" (*Caudill v. Blue Cross and Blue Shield of N.C., Inc.*, 999 F.2d 74, 77 (4th Cir. 1993) (emphasis added)), even though all of OPM's actions are subject to APA review (*see* 5. C.F.R. § 890.107).  Moreover, the Relator's own allegations acknowledge this point, and contradict his interpretation.  The Relator alleges that "OPM, as a party in interest, has the *final* 'right of review' of the denial [of health benefits] by the carrier."  Proposed Second Am. Compl. ¶ 84 (emphasis added and citation omitted).

Because Congress clearly intended OPM to be the decision-maker with respect to all FEHBA benefit disputes, the fact that OPM's decision are subject to APA review is

---

[3] The Relator unfairly accuses Defendants of "repeatedly overstating matters" by "describing the OPM as the 'ultimate authority on whether benefits should be paid'" without mentioning that OPM's decisions are subject to judicial review.  Relator's Memo at 8 n.7 (*quoting* Defs' Memo at 5).  However, in the very same sentence quoted by the Relator, Defendants make clear that OPM's benefit determinations are subject to judicial review under the APA, stating:  "OPM is the ultimate authority on whether benefits should be paid, subject only to normal Administrative Procedure Act review."  Defs' Memo at 5.

irrelevant. The logic of *DynCorp* applies equally whether the agency in question is subject to deferential APA review or is not subject to judicial review at all.[4]

For similar reasons, the Relator's comparison of judicial review under FEHBA to that under ERISA is inappropriate. *See* Relator's Memo at 8 n.7. Review of private health benefits determinations under ERISA does not involve putting the federal Government's money at risk and does not implicate Congress' desire to ensure that all federal employees nationwide are treated consistently.

In sum, even though the Relator is not literally seeking his own health benefits, his lawsuit – which essentially would require Defendants to pay certain benefits to other enrollees in the future and would hold Defendants liable for not doing so in the past – interferes with OPM's exclusive authority to adjudicate all FEHBA benefit disputes, robbing the agency of its opportunity to use its expertise to weigh the competing interests at play under FEHBA. Nothing in the Relator's proposed Second Amended Complaint or his Memorandum in Opposition to Defendants' Motion to Dismiss suggests any valid reason to allow the Relator to be able to undermine OPM's exclusive ability to resolve all benefit determinations in the first instance, and the Motion to Amend should therefore be denied.

---

[4] In addition, it is not at all clear that the *DynCorp* court's statement that the agency's "determination is not subject to judicial review" was meant to suggest that no *APA review* was possible. *DynCorp*, 895 F. Supp. at 849 (*quoting Univs. Research Ass'n v. Coutu*, 450 U.S. 754, 761 n.10 (1981)). The Supreme Court precedent cited in *DynCorp* appears to be referring to the fact that no *de novo* judicial review was available. The Supreme Court explicitly stated that at least two Courts of Appeals have held that the agency's determinations are reviewable under the APA, and that it was expressing no view on that question. *Coutu*, 450 U.S. at 761 n.10.

**B.    The Relator's Proposed Second Amended Complaint Is Precluded by OPM's Exclusive Authority to Police FEHBA Carriers**

In addition to interfering with OPM's power to resolve FEHBA benefit disputes, the Relator's proposed Second Amended Complaint would also interfere with OPM's expansive authority to police FEHBA carriers. *See* Defs' Memo at 4-5, 11, 14. Faced with these facts, the Relator's primary retort is to repeatedly declare, without any authority, that OPM's powers are "limited." Relator's Memo at 1, 7, 8. The Relator's claim flies in the face of the FEHBA statute and regulations and the many cases interpreting them.

For example, the court in *Bridges* discussed many of the police powers that OPM possesses "[i]n addition to reviewing disputed claims." 935 F. Supp. at 42. These powers are contained in regulations promulgated under FEHBA's "broad regulatory authority" and include the power to punish a carrier that engages in a "pattern of poor conduct" or in "fraudulent or unethical business or health care practices or otherwise displays a lack of business integrity or honesty." *Id.* (citations omitted). OPM also has the right to audit FEHBA carriers. *Id.* at 43. These powers granted under FEHBA to OPM led the court to conclude that "FEHBA envisions a comprehensive administrative rubric for the protection of federal employees." *Id.* at 43.

Similarly, the Eleventh Circuit has concluded that "Congress has given OPM broad authority to regulate the field in which OPM negotiates the insurance contracts." *Muratore*, 222 F.3d at 923. In a previous decision, it held that "Congress gave OPM the authority to administer the federal benefits program, to proscribe regulations necessary to meet this end, and to bind carriers to OPM's interpretations of their plans." *Kobleur*, 954 F.2d at 711; *see also Kight v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, 34 F. Supp. 2d

334, 342 (E.D. Va. 1999) ("Congress already adopted an enforcement scheme in FEHBA whereby it delegated the power to police the administration of FEHBA plans to OPM."). Accordingly, this Court should reject the Relator's unsupported claim that OPM's police powers are somehow "limited."

This Court should also reject the Relator's erroneous assertion that without the FCA, the Government would have no remedy under FEHBA in situations like this case. *See* Relator's Memo at 8, 9. For starters, OPM has the authority to penalize carriers for any "pattern of poor conduct," "fraudulent or unethical business or health care practices" or "lack of business integrity or honesty." *Bridges*, 935 F. Supp. at 42. Indeed, the Relator's proposed Second Amended Complaint recognizes OPM's power to penalize carriers and even identifies the Government account into which "contractual penalties" are deposited. Proposed Second Am. Compl. ¶ 25.

In addition, the Government plainly has the ability to sue a FEHBA carrier for breach of contract (whether or not based on fraud) and the contract even specifies what law is to govern in such a case. *See* Proposed Second Am. Compl. at Exh. A at V-11 (§ 5.62). The contract also specifies many other remedies that are available to OPM under various situations, including when there is "[a]ny fraud, embezzlement or misappropriation of FEHBA funds." *Id*. at I-7 (§ 1.10(a)(12)). These remedies include OPM's ability to terminate the carrier's contract and to "[w]ithhold[] payment of subscription income or restrict[] access to the Carrier's Letter of Credit account." *Id*. (§ 1.10(b)(4) and (6)).

Importantly, OPM's regulations also grant it a specific remedy if a carrier does not make "[t]imely and accurate adjudication of claims." 48 C.F.R. § 1609.7001(b)(4). In short,

OPM has no shortage of remedies (aside from the FCA) to address the Relator's allegations, and its exclusive power to police compliance precludes Relator's FCA claims.

In an effort to read all of these remedies out of the statutory, regulatory, and contractual scheme, the Relator asserts that these remedies are trumped by the contract's inclusion of the standard "Contract Disputes Act" clause. Relator's Memo at 9. This clause is set forth at Federal Acquisition Regulation ("FAR")[5] 52.233-1. *See* Proposed Second Am. Compl. at Exh. A at V-22 (§ 5.36). The Relator has, however, misread the purpose of that clause and of the Contract Disputes Act in general. The Act simply "establishes procedures and requirements for asserting and resolving claims." FAR 33.202. Is has nothing to do with the substantive rights of the parties as described in a contract, other than to say that such rights must be enforced using the specific procedures in the Act.

The Relator's attempt to distinguish *United States v. Southland Management Corp.*, 326 F.3d 669 (5th Cir. 2003) on this ground must also fail. *Southland* stands for the simple proposition that when a contract explicitly addresses a certain type of breach and provides a specific remedy, no FCA action will lie. *Id*. at 676-77. As described above, the contractual scheme provides numerous specific remedies to address the Relator's allegations. The fact that the contract also includes the standard Contract Disputes Act clause cannot change that.

The Relator's proposed Second Amended Complaint therefore is futile because OPM has ample authority to police FEHBA carriers in situations like this, because Congress granted that authority to OPM exclusively, and "because the detailed enforcement scheme of

---

[5] The FAR can be found at 48 C.F.R.

the FEHBA leaves no room for" the Relator's FCA action.  *Bridges*, 935 F. Supp. at 43.

## II.    THE RELATOR'S PROPOSED SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM

Unable to avoid the preclusive effect of FEHBA, the Relator expends most of his attention in the proposed Second Amended Complaint on attempting to remedy the First Amended Complaint's clear inadequacies under Rule 9(b).  Thus, the Relator – for the first time – identifies what the alleged false claims were:  claims for the "service charge" under the contract.  Proposed Second Am. Compl. ¶ 93.  He states when they were submitted:  on the last day of every month.  *Id*.  And he states why they were allegedly false:  because Defendants allegedly did not perform all the work under the contract so as to entitled them to the entire service charge.  *Id*. ¶ 94.  Yet, as discussed in Section III below, these proposed changes are not sufficient, within the context of Rule 9(b) and the FCA, to permit the Relator's Motion to Amend to be granted.

Moreover, in attempting to identify with greater particularity the alleged false claims, the Relator only further clarifies why his proposed Second Amended Complaint fails properly to allege the basic elements of a FCA violation.  Indeed, the Relator's latest Complaint has taken a step backwards in this regard.  Because the Relator's proposed Second Amended Complaint would not survive a Rule 12(b)(6) motion to dismiss, further amendment of the Complaint would be futile and his Motion to Amend should be denied.

To make out a valid FCA claim, the Relator must properly plead that Defendants "1) present[ed] or cause[ed] to be presented to the United States government, a claim for approval or payment, where 2) that claim is false or fraudulent, and 3) the action was undertaken 'knowingly,' in other words, with actual knowledge of the falsity of the

information contained in the claim, or in deliberate ignorance or reckless disregard of the truth or falsity of that information." *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 225 (1st Cir. 2004); *see also* Defs' Memo at 17.  In addition, the Relator must properly plead facts sufficient to show that the false claim was material to the Government's decision to pay.  Defs' Memo at 22.  The Relator's proposed Second Amended Complaint fails to properly plead that there were any false or fraudulent claims or that any such claims were material.

The Relator's apparent theory is that Defendants purposely failed to pay claims for speech therapy associated with mental disorders, and for that reason did not perform all the required work under the contract.  Thus, the Relator claims, Defendants were not entitled to all of the service charge they received from OPM, and their claims for that service charge were a fraud on OPM.  The facts as alleged, however, do not support Relator's assertions.

First, the proposed Second Amended Complaint now clearly alleges that OPM knew that Defendants were denying speech therapy claims associated with mental disorders on an allegedly systematic basis.  Proposed Second Am. Compl. ¶¶ 87, 96.  Indeed, the Relator relies exclusively on the fact that these "denials are frequently reversed by OPM" to suggest that Defendants acted knowingly.  *Id.* ¶ 96.  If these actions by OPM are sufficient to show Defendants' knowledge, they must by definition be sufficient to show OPM's knowledge as well.  Because OPM allegedly knew about this pattern of claims denial, Defendants' claims cannot be false:

> If the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim.  In such a case, the

> government's knowledge effectively negates the fraud or falsity required by
> the FCA.

*United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 (7th Cir. 1999). Aside from

this, even if the claims could somehow still be false, their falsity could not have been

material since OPM chose to pay the claims for the service charge anyway.[6]

Second, the Relator fails to adequately plead that Defendants' claims for the service

charge were false, because Defendants would have been entitled to the entire service charge

even assuming they had improperly processed claims as the Relator alleges. The service

charge is a negotiated amount. Proposed Second Am. Compl. ¶ 29; *see also id*. at Exh. A at

III-5 (§ 3.7(a)). The Relator fails to mention, however, that the factors the Government *must*

consider in setting the service charge include "such elements as the accurate and timely

processing of benefit claims and the volume and validity of disputed claims . . . ." 48 C.F.R.

1615.404-70(a)(1). If Defendants did not accurately process claims or if disputed claims

---

[6] OPM's knowledge of Defendants' allegedly improper claims processing practices also presents
another problem for the Relator. Section 3730(e)(4) of the FCA provides:

> No court shall have jurisdiction over an action under this section based upon the
> public disclosure of allegations or transactions in a criminal, civil, or administrative
> hearing, in a congressional, administrative, or Government Accounting Office report,
> hearing, audit, or investigation, or from the news media, unless . . . the person
> bringing the action is an original source of the information.

Because OPM learned of the allegedly improper pattern of claims denial through its administrative
hearing process, the Relator's action is barred unless he is "an original source," which he does not and
cannot claim to be. As if that were not enough, the Relator admits that even his defective prior
complaint was based on contract excerpts "from OPM" and other information "provided by OPM
personnel." Relator's Memo at 10. It now appears that in order to make out allegations that comply
with Rule 9(b), he has "obtained full copies of the contract" and other documents from OPM.
Assuming he obtained this information via the Freedom of Information Act, the jurisdictional bar of
§ 3730(e)(4) will be triggered for the additional reason that the Relator's claims are based on
information obtained from OPM. *Karvelas*, 360 F.3d at 230; *United States ex rel. Paranich v.
Sorgnard*, 396 F.3d 326, 334 (3d Cir. 2005).

decisions were frequently overturned by OPM – the very things the Relator alleges – then that would be reflected in the service charge. Therefore, even assuming *arguendo* that Defendants' had improperly processed claims as alleged, the Relator has not properly pled that Defendants' claims for the service charge were false because the service charge would have taken into account any of Defendants' claims processing deficiencies.[7]

Aside from failing to properly allege that Defendants' claims were false or material, the Relator's proposed Second Amended Complaint is inadequate in a more general sense. The facts it alleges lack the traditional indicia of fraud. At most, the Relator's allegations amount to a contractual or regulatory issue between OPM and BCBSA, not a violation of the FCA. *See, e.g.*, *Karvelas*, 360 F.3d at 234; *United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996). The fact that OPM knew about the alleged pattern of improper claims denial goes a long way in showing that there was no fraud here. Other facts in the Relator's proposed Second Amended Complaint lead to the same conclusion.

For example, there is no indication that Defendants thought they were doing anything wrong in allegedly systematically denying claims for speech therapy associated with mental disorders. To the contrary, the Relator alleges that he was apprised of that practice by not one but "three separate agents of the defendants." Relator's Memo at 11; *see also* Proposed Second Am. Compl. ¶¶ 65, 67, 69-72, 75. It is a strange fraud indeed where the perpetrator repeatedly tells the victim about the fraudulent scheme.

---

[7] Ability to adjust the service charge is yet another contractually based remedy that OPM has to address the precise situation alleged by the Relator. *See* Section I above.

In addition, the Relator also failed to plead any credible motive for Defendants'
actions.  Denying claims for speech therapy associated with mental disorders does not result
in one penny of added profit for the Defendants.  Defs' Memo at 6-7.  Now realizing this, the
Relator belatedly attempts to concoct a motive by suggesting that Defendants engage in the
same practice in their private plans where they could make additional profit by improperly
denying such claims.  Relator's Memo at 16 n.16.  Even assuming, *arguendo*, that this were
true, this assertion misses the mark because the Relator did not plead that Defendants receive
any benefits by allegedly engaging in that practice in connection with the Service Benefit
Plan.

Moreover, this Court should reject the Relator's speculative and conclusory claims
about how Defendants process claims for private plans.  The Relator admits he has no
personal knowledge that Defendants engage in similar practices in private plans and that he
can only make that allegation on "information and belief."  Proposed Second Am. Compl.
¶ 15.  As Defendants stated in their prior filing, the First Circuit has held that allegations
made on information and belief are "subject to the additional requirement that 'the complaint
set forth the facts on which the belief is founded.'"  *Karvelas*, 360 F.3d at 226 (quoting *New
England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987)).  The Relator
offers no facts whatsoever in support of his allegation and it therefore must be ignored.  *Id*. at
224 ("we reject claims that are made in the complaint if they are 'bald assertions'").

For all these reasons, the Relator's newly amended Complaint does not sufficiently
make out a claim of fraud under the FCA, and the Motion to Amend should be denied.

III.    **RULE 9(B) AND THE FALSE CLAIMS ACT REQUIRE THAT LEAVE TO AMEND BE DENIED**

As the Relator acknowledges, having already amended his complaint once, he has no automatic right to amend again under Rule 15(a).  Given that fact, the policies behind Rule 9(b) and the FCA require that leave to amend a second time be denied.

One of the purposes of Rule 9(b) is "to prevent the filing of suits that simply hope to uncover relevant information during discovery."  *Karvelas*, 360 F.3d at 226 (citation omitted).  For that reason, "courts have repeatedly refused to allow qui tam relators to rely on later discovery to comply with Rule 9(b)'s pleadings requirements."  *Id*. at 231 (citations omitted).  The FCA's requirement that a relator disclose "substantially all material evidence and information" (31 U.S.C. § 3730(b)(2)) to the Government upon filing a *qui tam* complaint also means that relators ought not be allowed to amend their complaints:

> allowing a qui tam relator to amend his or her complaint after conducting further discovery would mean that "the government will have been compelled to decide whether or not to intervene absent complete information about the relator's cause of action." Boese, Civil False Claims and Qui Tam Actions § 4.04[C].  Thus, allowing a relator to plead generally at the outset and amend the complaint at the 12(b)(6) stage after discovery would be at odds with the FCA's procedures for filing a qui tam action and its protections for the government (which is, of course, the real party in interest in a qui tam action).

*Karvelas*, 360 F.3d at 231.

Here, of course, the Relator has not conducted any formal discovery.  However, it is clear that he has been conducting informal discovery and is attempting to use that information to get past Defendants' Rule 12(b)(6) motion to dismiss.  For example, the Relator has admitted that he has obtained information from OPM since the filing of his lawsuit and that the very purpose of his amending the complaint again is to incorporate that

information to attempt to avoid Rule 9(b) deficiencies.  Relator's Memo at 10.  Allowing the

Relator to rely on information gained from the Government after the filing of his initial (and

an amended) complaint seems wholly inconsistent with both Rule 9(b) and the FCA's

jurisdictional bar.  *See supra*, at 16 n.6.

In addition, the Relator is trying to incorporate into his new Complaint information

gained from Defendants' motion to dismiss.  For example, the Relator's attempt to plead a

new motive in his proposed Second Amended Complaint is fueled entirely by the revelation

in Defendants' motion to dismiss that no possible motive existed.  *See supra*, at 18.

The policies behind Rule 9(b) and the FCA dictate that the Relator not be permitted to

avoid basic flaws in his Complaint by amending that pleading to incorporate facts he

discovers along the way.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny the Relator's Motion to File Second

Amended Complaint.


Dated:  April 21, 2006                          Respectfully submitted,

                                                <u>/s/ Nicholas J. Nesgos</u>
                                                Nicholas J. Nesgos, BBO No. 553177
                                                nnesgos@pbl.com
                                                Jennifer Finger, BBO No. 641830
                                                jfinger@pbl.com
                                                Posternak Blankstein & Lund LLP
                                                Prudential Tower, 800 Boylston Street
                                                Boston, MA 02199-8004
                                                Telephone:  (617) 973-6100
                                                Fax:  (617) 367-2315

Anthony F. Shelley
ashelley@milchev.com
Adam P. Feinberg
afeinberg@milchev.com
Miller & Chevalier Chartered
655 15th Street, NW
Suite 900
Washington, DC  20005
Telephone:  (202) 626-6800
Fax:  (202) 628-0858


*Counsel for Defendant Blue Cross Blue Shield Association*


/s/  Michael J. Tuteur
Michael J. Tuteur, BBO No. 543780
mtuteur@foley.com
Lawrence M. Kraus, BBO No. 564561
lkraus@foley.com
Foley & Lardner LLP
111 Huntington Avenue
Boston, MA 02199
Telephone:  617-342-4000
Fax:  617-342-4001


*Counsel for Defendant Anthem Blue Cross Blue Shield of New Hampshire*

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to those indicated as non registered participants on this date, April 21, 2006.

/s/   Michael J. Tuteur