UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel.<br>JOHN M. GREABE,<br><br>　　　　　Plaintiffs<br><br>　　v.<br><br>BLUE CROSS BLUE SHIELD ASSOCIATION<br>and ANTHEM BLUE CROSS BLUE SHIELD<br>OF NEW HAMPSHIRE<br><br>　　　　　Defendants | Civil Action No. 04-11355-MEL |

**RELATOR'S REPLY TO DEFENDANTS' JOINT OPPOSITION TO RELATOR'S
MOTION TO FILE A SECOND AMENDED COMPLAINT**

　　While not disputing the well-settled principle that motions to amend should be freely given when justice so requires, Fed. R. Civ. P.15 (a), defendants object to Relator's motion on the ground that his proposed amendment would be futile. In an effort to avoid having to defend against Relator's allegations, defendants seriously miscast, indeed distort, Relator's allegations and legal theories. And along the way, defendants also seriously mischaracterize the legal regime into which they attempt to force Relator's claims. The Court need not long be deterred by defendants' arguments, since those arguments attack a case that has never been pled.

　　The Second Amended Complaint that is actually before the Court is simple. The United States has contracted with the Association to administer health insurance benefits for federal employees. One of the services that the United States has contracted and paid for is "adjudication" of health insurance claims. The Association certifies, in connection with its monthly claims for payment, that it has provided the contracted-for services, including

1

adjudication of claims. However, the Association, acting through local agents such as Anthem New Hampshire, has designed and maintained a system that does not adjudicate certain claims. Instead, the system designed and implemented by defendants shunts off, and systematically denies, claims for "medical services" such as speech, occupational, and physical therapy when defendants deem the claims to be submitted in connection with "mental disorder" diagnoses. Because defendants are not delivering the adjudication services they claim payment for, their monthly claims for payment are "false" within the meaning of the False Claims Act, 31 U.S.C. §§ 3729 et seq.

I. **THIS ACTION IS NOT PRECLUDED BY THE FEDERAL EMPLOYEES HEALTH BENEFITS ACT ("FEHBA")**

Defendants' persistence in their argument for FEHBA preclusion is surprising. This action does not seek health insurance benefits. It is about adjudicative services promised and paid for, but not provided. The United States bought and paid for these adjudicative services through a contract, Contract CS 1039. *Ex. A* to Second Amended Complaint. That contract, at §5.36(a), declares itself expressly to be "subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613)." The Contract Disputes Act certainly does not preclude the United States from bringing a False Claims Act claim; the two remedies are unquestionably cumulative. The congressional report explaining 41 U.S.C. §604, the antifraud provision of the Contract Disputes Act, states in relevant part:

> This provision is intended to be separate and distinct from the rights now possessed by the Government in legislation such as the False Claims Act…That is, section 4(b) [41 U.S.C. §604] is not intended in any way to diminish the rights now afforded to the Government under current legislation…Section 4(b) will afford the Government a separate and additional remedy of recovering an amount equal to the fraudulent or misrepresented amount.

S. Rep. No. 95-1118, 95th Cong., 2d Sess. 20 (1978), reprinted in 1978 U.S.C.C.A.N. 5235, *quoted in UMC Elecs. Co. v. United States,* 43 Fed. Cl. 776, 790 (Fed. Cl. 1990), *aff'd* 249 F.3d 1337 (Fed. Cir. 2001). FEHBA does not preclude the Government's claim that defendants were falsely billing it for adjudicative services (not health insurance benefits) that defendants were not providing.

For this reason, defendants' reliance on *Bridges v. Blue Cross and Blue Shield Association*, 935 F. Supp. 37 (D. D.C. 1996) and *Kobleur v. Group Hospitalization & Medical Services, Inc.,* 954 F.2d 705 (11th Cir. 1992) is unavailing. *Bridges* held that FEHBA precluded a RICO claim, brought by an enrollee against the Association, stemming from its systematic non-disclosure of certain provider discounts. *Kobleur* was a benefits classification/denial case where the plaintiffs failed to exhaust their administrative remedies through OPM, as required by FEHBA. However, this case does not involve a claim by an enrollee arising out of the provision or denial of health benefits. This is the Government's claim that it was harmed by defendants' fraudulent failure to conduct meaningful adjudications. Neither FEHBA, nor *Bridges* or *Kobleur,* has any impact on this claim.

Defendants make the expansive suggestion that "when a contract specifically addresses a certain type of breach and provides a specific remedy no FCA action will lie," relying almost entirely on *United States of America v. Southland Management Corporation*, 326 F. 3d 669 (5th Cir. 2003). Defendant's Joint Opposition to Relator's Motion to File Second Amended Complaint ("Joint Opposition"), Docket No. 31, at 13. However, defendants misread *Southland* entirely. *Southland* addressed a subsidized housing owner's breach of its contractual obligation to provide "decent, safe, and sanitary housing." The contract in *Southland* gave the property owner a "corrective action period" before HUD could stop making housing assistance payments.

3

During the corrective action period, the owners could still collect assistance payments, even if the dwellings were not decent, safe or sanitary, as promised. 326 F.3d at 676. From this fact, the Court's holding logically followed:

> "During the corrective action period, then, claims for housing assistance payments are *not false claims, because they are claims for money to which the Owners are entitled* (and which provide the wherewithal both to operate the property and to take the necessary corrective actions)." Id at 676. (Emphasis supplied.)[1]

Thus, *Southland* did not depend on the preclusion of an FCA claim by a specific or exclusive remedy in the contract. It turned on the fact that the contractor's claims were not false.

Obviously, there is no "corrective action period" in defendants' contract with OPM. Defendants are not entitled to make a false representation that they properly adjudicated claims, and then receive payment while they correct their practices. *Southland*, properly read, is inapposite.

Far more instructive is *United States ex rel. Mikes v. Straus*, 274 F.3d 687 (2d Cir. 2001). *Mikes* described two categories of false claims that create liability under the FCA. The first is a "factually false" claim, where the defendant seeks reimbursement for a service not provided at all, or for worthless services that for all practical purposes are the equivalent of no services at all. *Mikes*, 274 F.3d at 703. The other category is a "legally false" claim, where the defendant makes a false representation of compliance with a federal statute or regulation, or a prescribed contractual term, which is a condition precedent to final approval of the claim. *Id.* at 696-97.

Defendants engaged in both factual and legal falsity. Factually, they claimed entitlement to the entirety of the service charge paid, despite knowing that the entirety of the service charge had not been earned. Legally, the claims are false or fraudulent because the Association, in conspiracy with Anthem and others, has annually certified that it has materially complied with

---

[1] Indeed, the fact that the case turned on the HUD contract terms' rates, rather than the scope of the Government's remedies, is illustrated by the concurring opinion of Judge Jones. *Southland* at 677 (Jones, J., concurring).

4

the contract and accurately adjudicated claims made pursuant to the contract, despite knowing that these express conditions precedent have not been satisfied.  *See* Second Amended Complaint at ¶¶94-96; Relator's Memorandum of Law Opposing Joint Motion to Dismiss, Docket No. 29 at 6.  Contract CS 1039 does not give OPM any specific or exclusive remedy against these two types of fraud that would preclude FCA relief.  Rather, the remedies allowed at §5.36(a) and (b) are explicitly harmonized with FCA remedies.  Therefore, dismissal of the FCA claim is inappropriate.

## II. THIS ACTION IS NOT PRECLUDED BY ANY ALLEGED "EXCLUSIVE AUTHORITY" OF OPM

Defendants ignore Relator's allegation that their claims were factually false, and proceed to level an administrative authority defense against Relator's allegation that defendants' annual certifications were legally false.  *See* Second Amended Complaint ¶94.  Defendants contend that this Court has no authority to determine whether defendants' certifications that they complied with the contract and provided accurate adjudication of claims were true or false, claiming that the only entity with the authority to make this determination is OPM.  *See United States ex rel. Windsor v. DynCorp, Inc.*, 895 F.Supp. 844 (E. D. Va. 1995).

In *DynCorp*, relator Windsor alleged that DynCorp, a defense contractor, had submitted claims for payment that were legally false because the contractor had deliberately misclassified workers under the Davis-Bacon Act, in order to underpay those workers.  *DynCorp* allowed summary judgment for the contractor, because it concluded that "it is impossible to determine whether DynCorp submitted a false claim to the Government without first determining whether DynCorp actually misclassified an employee in a given instance.  And, the responsibility for resolving such disputes rests not with the courts, but with the Department of Labor."  895 F.Supp. at 851.

5

Defendants pin their hopes on *DynCorp*, claiming that the OPM's authority over health insurance claims by federal employees is the equivalent of the Department of Labor's authority over Davis-Bacon Act employee classifications. In both instances, claim defendants, the agency's authority is plenary and thus no FCA claim can arise from the defendants' false certification to have met the agency's regulations. However, *DynCorp* does not support the defendants, for two reasons.

### A. *DynCorp* is Irrelevant in the Context of Factually False Claims

First, *DynCorp* itself expressly limited its holding to legally false claims. According to *DynCorp*, the Department of Labor's exclusive authority was directed to the issue of whether the defendant contractor's certifications did or did not comply with Davis-Bacon Act classifications. *Mikes, supra,* recognized this situation as a legally false claim. However, *DynCorp* made clear that factually false claims, *i.e.*, claims for services never provided at all, are not impacted in the least by the Department of Labor's authority to interpret its regulations:

> Where the contractor's statement may be determined to be false without regard to complex Davis-Bacon Act classification regulations, then a Davis-Bacon Act violation may form the basis of an FCA suit. That is, where the "falsity" of the false statement is not dependent on the interpretation and application of those regulations, the current obstacle to FCA liability disappears. For example, if, unlike the instant situation, a contractor misrepresents the wages actually paid to its employees, or lies about the frequency with which they receive paychecks, an FCA action may be viable.

895 F.Supp. at 852 (footnotes and citation omitted). Of course, this passage describes a classic factually false claim. It also conclusively establishes that the nature or extent of the governing agency's authority or reviewability is irrelevant to a factually false claim.

Excluding factually false claims from the *DynCorp* analysis makes perfect sense, as this case illustrates. No one need "interpret" complex regulations in order to recognize defendants' factually false claims. Either the defendants adjudicated each claim properly, or they did not, by

6

simply programming their computer to deny claims. This case is surely one which American jurors will be able to resolve. See, e.g. *EIU Group, Inc. v. Citibank Delaware, Inc. and Zeigler*, Civil Action No. 00-12565-WGY, 2006 U.S. Dist. Lexis 21759 (D. Mass. April 21, 2006). It is the equivalent of *DynCorp*'s hypothetical of a dishonest contractor who, far beyond misclassifying the pay grade of employees, actually submitted claims for fictitious employees or for fictitious work hours. Agency expertise and authority in interpreting its regulations would be irrelevant in such a situation. *DynCorp* at 852; *see also In re Cardiac Devices Qui Tam Litigation,* 221 F.R.D. 318, 336 (D. Conn. 2004).

### B.   *DynCorp* is Not Analogous to this Action for Legally False Claims

The second reason that defendants' *DynCorp* analogy fails is *DynCorp*'s conclusion that the "The Department of Labor has *sole* responsibility for resolving classification disputes under the Davis-Bacon Act. . ." 895 F.Supp. at 852 (emphasis added). In contrast, OPM's action under FEHBA may be challenged in an Article III court as arbitrary and capricious. *See* 5 C.F.R. §890.107(c) and (d). This review is not, as defendants would suggest, merely "normal Administrative Procedure Act review." *See* Memorandum Supporting Joint Motion to Dismiss, Docket No. 25, at 5. Court oversight of OPM's decision making, while deferential, is not conducted via "review" under the APA; it is conducted via a lawsuit filed in the district court under FEHBA. *See* 5 C.F.R. §890.107(c). More importantly, it is inaccurate to describe OPM's authority as "exclusive," when Article III courts are just as empowered to assess the legality of OPM's benefits determinations under FEHBA as they are to assess the legality of a private health plan's benefits determinations under ERISA. *Compare Harris v. Mutual of Omaha Cos.,* 992 F.2d 706 (7th Cir. 1993) (review of OPM benefits determinations) *with Ayotte v. Matthew*

7

*Thornton Health Plan*, *Inc.*, No. 03-227-JD, 2004 U.S. Dist. LEXIS 12002 (D. N.H. June 28, 2004) (review of private health plan determinations under ERISA).

Having improperly equated OPM's authority with that of the Department of Labor in Davis-Bacon matters, defendants compound their error in the following passage of their Joint Opposition:

> Because Congress clearly intended OPM to be the decision-maker with respect to all FEHBA benefit disputes, the fact that OPM's decision[s] are subject to APA review is irrelevant. The logic of *DynCorp* applies equally whether the agency in question is subject to deferential APA review or is not subject to judicial review at all.

Joint Opposition at 9-10, footnote omitted. Defendants nowhere explain their *ipse dixit* that "the logic of *DynCorp*" should apply whether or not Article III courts are empowered to weigh in on the issue under consideration. Perhaps that is because the *ipse dixit* is highly suspect. Precluding any Article III court adjudication where courts have no warrant to speak is one thing; precluding such adjudication where courts clearly are empowered to speak (albeit after the agency has spoken) is another thing altogether. And courts are clearly empowered to speak on the legality of benefits determinations made under federal health plans. *See* 5 C.F.R. §890.107(c) and (d).

As discussed above, the Second Amended Complaint alleges that defendants made both factually and legally false claims. *DynCorp* is entirely irrelevant to the factually false claims. Further, careful comparison of this case with *DynCorp* reveals that *DynCorp* does not undermine Relator's allegations of legally false claims. Relator's claims are not precluded by any power or authority of the OPM.

**III.     THE DEFENDANTS' FRAUDULENT ACTS CAUSED FINANCIAL HARM TO THE GOVERNMENT**

Without ever saying so, the Defendants attempt to argue that their actions did not cause financial harm to the Government. Defendants suggest that one reason for dismissing this lawsuit is that it "would essentially hold Defendants liable for not paying claims for speech therapy associated with mental disorders and would force defendants to pay such claims in the future or risk FCA liability." *See* Joint Opposition at 5. This, defendants argue, could cost the Government more money in the long term. *See id*.

This argument requires the premise that the only interest of the United States is to hold tightly onto monies in the Employees Health Benefits Fund, a premise that does not withstand even cursory review. A central goal of Contract CS 1039 is to ensure that federal employees -- many of whom the Government must attract and retain in the face of competition from the higher-paying private sector -- are in fact compensated for the medical expenses covered by their federal health plans. The Government is paying the Association to adjudicate claims properly and meaningfully so as to achieve that goal. A painter hired by the Defense Department to paint 100 buildings on a military base who claims and is paid for painting all 100, but has actually painted only 90, cannot obtain dismissal of an FCA claim on the ground that the suit interferes with the Department's interest in limiting its expenditures on paint. The Government wants the buildings to be painted, and it wants fair adjudications for its employees who subscribe to the Blue Cross Blue Shield Service Benefits Plan and are entitled to benefits. Certainly, the Government does not want to buy more paint than it needs or to spend monies on services that are not covered by employee health plans. But there are plenty of ways for the Government to achieve these goals without seeing itself stripped of authority to sue when bargained-for services are not in fact delivered.

Moreover, 5 C.F.R. 890.105 gives OPM the right to review a carrier's denial of a claim for reimbursement. In the case of Relator's son, and presumably in all cases, this process necessitated independent medical review by OPM. *See* Second Amended Complaint at ¶60. Defendants' failure to engage in the bargained-for adjudications thus forces OPM to spend money needlessly on doctors to perform independent medical review – precisely the review that OPM was paying defendants to conduct as part of meaningful "adjudication." Thus, the defendants' fraud has resulted in real financial harm to the Government.

## IV. RELATOR HAS NOT PLED THAT OPM HAD KNOWLEDGE OF THE FRAUD, NOR WOULD SUCH KNOWLEDGE BAR THIS ACTION

Defendants argue that the Second Amended Complaint "now clearly alleges that OPM knew that Defendants were denying speech therapy claims associated with mental disorders on allegedly systematic basis." Joint Opposition at 15, *citing* Second Amended Complaint at 87 and 96. Not surprisingly, the cited paragraphs bear little resemblance to defendants' description of them. These paragraphs allege that *defendants*, and not OPM, knew that their practices were fraudulent. OPM's only participation in these paragraphs is that it regards certain therapies as medically necessary, and that it "frequently revers[es]" defendants' denials. This is a far cry from alleging that OPM knew that defendants were shunting therapy claims, rather than adjudicating them as they had contracted to do.[2]

---

[2] Defendants' suggestion that Relator's obtaining a copy of Contact CS 1039 from OPM prevents him from being "an original source of the information" described in the Second Amended Complaint, as required by 31 U.S.C. §3730(e)(4) of the FCA, is even further divorced from reality. *See* Memo Supporting Joint Motion to Dismiss at 16, n.6. *United States ex rel. Karvelas v. Melrose–Wakefield Hospital,* 360 F.3d 220, 231 (1st Cir. 2004) makes clear that the "information" referenced in §3730(e)(4) is the information necessary to satisfy Rule 9(b), *i.e.*, the "who, where, and what" of the fraud. The crux of defendants' fraud is that they designed a computer system that shunted and automatically denied certain claims, rather than adjudicating them. Relator is certainly the original source of this information, since he extracted it from defendants only after a dozen telephone calls and at least seven written submissions. Second Amended Complaint at ¶¶30-70. Defendants point to nothing that suggests that OPM knew of this computer shunting. Where Relator obtained a copy of Contract CS 1039 is irrelevant to the "allegations or transactions" that form the basis of Relator's "information."

10

Even if the defendants correctly described Relator's factual allegations, it would avail them little. A contractor who tells a government contracting officer that a claim is false still violates the FCA when the claim is submitted. *United States ex rel. Mayman v. Martin Marietta*, 894 F. Supp.218, 223 (D.Md. 1995); *see also United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991). While it is true that an FCA defendant has the right the rely on a Government agency's instructions in making bids on projects for the agency, *United States ex rel. Durcholz v. FKW, Inc*. 189 F.3d 542 (7th Cir 1999), that is simply not the situation here. Similarly, while "there may still be occasions when the government's knowledge of or cooperation with a contractor's actions is so extensive that the contractor could not as a matter of law possess the requisite state of mind to be liable under the FCA," *Shaw v. AAA Engineering and Drafting*, 213 F.3d 519, 534 (10th Cir. 2000) (citations omitted), it is obvious that Relator has not pled anything close to this level of knowledge and cooperation, and that this case could not reasonably be dismissed on that ground.

## V.    RELATOR SATISFIES RULE 9(b) AND THE AMENDMENT SHOULD BE ALLOWED

As a last gasp, defendants urge that "the policies behind Rule 9(b) and the FCA" disfavor the requested amendment. However, the policies that defendants identify are not threatened here, and are not served by denying the amendment.

At the time the complaint is filed, and prior to discovery, Rule 9(b) and the FCA require a *qui tam* relator only to specify the times, dates, places and identities of the individuals involved in the fraud, or the specifics in the documents prepared and submitted by the defendant fraudulently to obtain payment. *United States ex rel. Karvelas v. Melrose–Wakefield Hospital,* 360 F.3d 220, 231 (1st Cir. 2004). Relator has plainly done that here. *See generally* Second Amended Complaint, esp. ¶¶30-75, 82-84, 87-90.

11

Defendants' accusation at p. 19 of the Joint Opposition, citing *Karvelas*, that Relator is improperly trying to shore up his complaint with information obtained in discovery, need not long detain the Court. In the first place, Relator cannot possibly be shoring up his complaint with discovery, for the simple reason that he has had no discovery. Defendants' novel suggestion that Relator should be penalized for "informal discovery" is not supported by *Karvelas*, or by any authority whatsoever.

What *Karvelas* does guard against is the possibility that "a qui tam plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as 'a pretext to uncover unknown wrongs'" through discovery. 360 F.2d at 231, *quoting United States ex rel. Robinson v. Northrop Corp.,* 149 F.R.D. 142 (N.D. Ill. 1993). There is no danger of that possibility here. The facts that constitute the fraud were learned without the benefit of discovery and are properly and sufficiently pled. Consequently, under Fed. R. Civ. P. 15(a), Relator's motion should be granted and the joint motion to dismiss should be denied.

          Respectfully submitted,

          Relator, John M. Greabe

          By his attorneys,

          WIGGIN & NOURIE, P.A.

By: */s/ Richard B. McNamara*
    Richard B. McNamara, BBO#
    Stephanie A. Bray, BBO#650408
    670 No. Commercial Street, Ste 305, P.O. Box 808
    Manchester, NH 03105
    (603) 669-2211

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Reply has been forwarded to all counsel of record pursuant to the Court's rules and procedures concerning electronic filing. Any persons not receiving notification through ECF as noted on the Notification of Electronic Filing will be conventionally served via first class mail, postage prepaid:

| | |
|---|---|
| Nicholas J. Nesgos<br>Jennifer Finger<br>Posternak, Blankstein & Lund, LLP<br>800 Boylston Street, Prudential Tower<br>Boston, MA 02199-8004 | Patricia M. Connolly<br>Assistant United States Attorney<br>1 Courthouse Way, Suite 9200<br>Boston, MA 02210 |
| Anthony F. Shelley<br>Adam P. Feinberg<br>Miller & Chevalier Chartered<br>655 15th Street, NW, Suite 900<br>Washington, DC<br>Michael J. Tuteur<br>Lawrence M. Kraus<br>Foley & Lardner, LLP<br>111 Huntingdon Avenue<br>Boston, MA 02199 | Michael F. Hertz<br>Joyce R. Branda<br>Tracy L. Hilmer<br>U.S. Dept. of Justice, Civil Division<br>PO Box 261, Ben Franklin Station<br>Washington, D.C. 20044 |

00722644.DOC