UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JOHN M. GREABE, | )<br>)<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | ) Civil Action No. 04-11355-MEL<br>) |
| BLUE CROSS BLUE SHIELD ASSOCIATION and ANTHEM BLUE CROSS BLUE SHIELD OF NEW HAMPSHIRE | )<br>)<br>)<br>) |
| Defendants | )<br>)<br>) |

**RELATOR'S REPLY TO DEFENDANTS' JOINT RESPONSE TO THE UNITED STATES' STATEMENT OF INTEREST**

Relator John M. Greabe respectfully submits this reply to Defendants' Joint Response ("Joint Response") to the United States' Statement of Interest (Document No. 41). Defendants' submission is less a "response" to the United States' Statement of Interest than a free-standing motion to dismiss which both introduces new arguments in favor of dismissal and elaborates earlier arguments that were not fully developed. For example, defendants devote three and one-half pages to renewing their argument that the Second Amended Complaint is deficient under Fed. R. Civ. P. 9(b), an issue on which the United States explicitly refused to weigh in. Joint Response at 14-17. Because the Court did not invite another round of full adversarial briefing, Relator will confine his responsive remarks to essentials.

I. **Defendants Again Misread the Complaint**

Defendants persist in taking liberties in describing the facts alleged in the complaint. For example, they claim that "…the Relator does *not* allege that Defendants

1

ever deceived OPM about their claims processing practices, including the alleged systematic denial of certain speech therapy claims, or about any other facts relevant to the setting of the Service Charge." Joint Statement at 3, emphasis in original. To see through this contention, the Court need not look further than the following paragraphs of the Second Amended Complaint:

> Paragraph 66: Anthem New Hampshire employee Lisa Twohig expressed concern to Relator "about how OPM might respond to yet another denial of speech therapy reimbursement for RELATOR's son…."
>
> Paragraph 67: In a second telephone call, Twohig told Relator that "issues involving speech and occupational therapy for children were a 'national problem' for the Association," and "again mentioned her 'concern about exposure to OPM.'"
>
> Paragraph 94: Each of the Association's monthly claims for its negotiated service charge is false or fraudulent, for two reasons: (a) OPM pays the Association for services, including adjudications, which defendants have not performed; and (b) each of the Association's annual statements, in accordance with the annual "truing up" process, falsely certifies that the Association is being paid only income that it has earned, and that the Association is in compliance with its contract with OPM.

*See* excerpt of Second Amended Complaint, Exhibit A to this Reply. These paragraphs most certainly allege that defendants have repeatedly and systematically deceived OPM, that they hoped to keep their deception secret from OPM, and that they were concerned about "exposure" if OPM ever found out about their computer shunting policy.

This is not the only example. Defendants use their response as an opportunity to contend, both belatedly and incorrectly, that the gravamen of the complaint is that they are not achieving infallible accuracy in their determinations: "…the Relator's allegations seek to impose different standards on FEHBA carriers (*e.g.*, a 100% claims processing accuracy rate)." Joint Statement at 12.

2

Once again, defendants' description of Relator's allegations differs markedly from the allegations themselves. Relator is not making a bare allegation that defendants' claims-handling services are yielding insufficiently accurate adjudicative *outcomes*. Rather, and once again, Relator alleges that, at least with respect to the category of claims at issue in this litigation, defendants are knowingly failing to provide adjudicative services that comply with the terms of the contract. In other words, defendants are knowingly providing non-compliant decisional *processes* that do not even deserve the descriptive appellation "adjudicative."

No one would seriously contest FCA liability if a FEHBA carrier simply flipped a coin to determine coverage, and then submitted monthly claims representing that it had delivered "all" of the adjudicative services bargained for. Defendants' computer shunting is no different. Whether defendants' flawed and deceptive processes for dealing with children's speech and occupational therapy claims result in adjudicative accuracy over all types of claims of 10%, 98% or 50% is irrelevant – the processes are still flawed and deceptive processes.

Thus, a careful reading of the Second Amended Complaint itself, rather than the distorted picture of the pleading painted in defendants' memoranda, confirms that Relator states a cause of action under the False Claims Act.

## II.      Defendants Misread the United States' Statement of Interest

Defendants further take liberties with the Government's Statement of Interest. As an initial matter, they rush to assure the Court that they do not "take issue with any of the United States' broad statements about the proper scope of the FCA." Joint Response at 6. They insist that their arguments concerning FEHBA pre-emption, the supposedly

3

"exclusive" authority of OPM to remedy the fraud identified in the Second Amended Complaint, and so on, are tailored only to "the facts as alleged." *Id.* However, they do not identify the specific facts to which they refer, and they do nothing to displace the United States' accurate perception that "defendants appear to argue that the FEHBA somehow dispossessed the district courts of their jurisdiction over FCA suits that involve the FEHBA program." United States' Statement of Interest, at 5.

Defendants also take liberties in attempting to wring from the Government's memorandum an endorsement of their Rule 9(b) defense. Defendants are quick to quote the Government as believing that "the particular facts alleged in this case may not present a viable theory of recovery under the FCA." Joint Response at 14. However, the Government's memorandum in two separate places explicitly disclaims any position whether the Relator has met the requirements of Rule 9(b). *See* United States' Statement of Interest, Document 39, at 2 and 4.

More importantly, it is obvious that the United States, in the sentence that defendants quote, was mistakenly referring *not* to the Second Amended Complaint now before the Court, but to the First Amended Complaint that Relator seeks to replace. That this is so, is apparent from the text of the Government's memorandum itself:

> Relator contends that Defendants have "discriminated against beneficiaries of the Service Benefit Plan who suffer from mental disorders for which speech, occupational or physical therapy are medically necessary treatments." Second Amended Complaint ¶92. According to Relator this alleged discrimination renders the Plan inferior to that for which OPM bargained . . . .The Amended Complaint contains the additional allegation – on information and belief – that defendants' practice has caused the Medicare and Tricare programs, in their capacities as secondary payors, to reimburse beneficiaries for the cost of such treatments. Second Amended Complaint ¶¶100-102.

4

Government's Statement of Interest, pp. 3-4. Paragraphs 92 through 102 of the Second Amended Complaint are included in the excerpt attached as Exhibit A hereto. Paragraph 92 makes absolutely no reference to discrimination. Paragraphs 100-102 make absolutely no reference to either the Medicare or Tricare program.

It is obvious that the allegations that the Government attributes in this passage to the Second Amended Complaint actually belonged to the First Amended Complaint, and that the Government's comments about Defendants' Rule 9(b) argument refer to a pleading that Relator seeks to supercede. Defendants are well aware of the differences between the First and Second Amended Complaints, since they mention some of them at page 2 of their Joint Response. It should be obvious to them as well that the Government's memorandum mistakenly referred to a previous iteration of the Complaint. Thus, their attempt to enlist the aid of the United States in mounting a Rule 9(b) defense should be viewed with a great deal of skepticism.

### III.  Defendants' Response is Unconvincing on the Merits

Defendants assure the Court that they "agree with many of the statements made by the United States in its Statement of Interest" and that "it is not clear that defendant's and the government and the United States have fundamentally inconsistent views about any disputes material to this case." Joint Statement, p. 5. But defendants then simply re-argue the position that they took in their Motion to Dismiss and their objections to the Motion to Amend, based upon unsupported readings of two cases, Windsor v. DynCorp, 895 F. Supp. 844 (E.D. Va. 1995) and United States v. Southland Management Corp., 326 F.3d 669 (5th Cir. 2003).

There is little new in Defendants' papers. Defendants' primary argument remains that FCA claims are prohibited here because Congress supposedly specifically granted OPM sole and exclusive authority to adjudicate all benefits determinations. Joint Response at 9. But as Relator and the Government have explained, this argument is simply wrong.

**A.  This Action is Not Precluded by OPM's Ability to Review the Defendants' Benefit Determination**

Defendants implicitly argue that the Court should ignore the plain language of the BCBS contract which, at paragraph 5.36a, declares itself expressly to be subject to the Contract Disputes Act of 1978, which in turn specifically provides in §604g, the Act's anti-fraud provision, that any rights the Government has under the Contract are separate and distinct from its rights under the False Claims Act. Defendants argue that, based on the court's reasoning in a case involving misclassification of workers under the Davis-Bacon Act, Windsor v. DynCorp, (supra), this Court should hold that FCA claims may not be brought because such claims would necessarily involve determinations about whether Blue Cross Blue Shield decisions on health benefit were correct, and such determinations must be "exclusively" made by OPM.

But as the Government correctly points out in its papers, "the DynCorp decision is properly read not as a ruling that administrative remedies must be exhausted before an FCA claim may be filed, but rather as finding that in that particular case, the Relator failed to demonstrate the required *scienter* for an FCA claim because there was no indication that the Defendant had 'knowingly' misclassified workers or doctored wage records." United States Statement of Interest at 12. Factually, the Dyncorp case is easily distinguished from this case in which, as the Government recognizes, *scienter* is pled. As

6

Relator argued in his Reply to Defendants' Objection to his Motion to Amend, DynCorp is irrelevant in the context of factually false claims.

Defendants also argue, once again, that DynCorp is relevant to this case because "its fundamental premise was that an FCA suit could not lie because it was impossible to determine whether DynCorp submitted a false claim without determining whether DynCorp actually misclassified an employee in a given instances and the responsibility for determining employee classification under the Act rests *exclusively* with the Department of Labor." Defendants then reason that because Congress specifically granted OPM "the exclusive authority to adjudicate all benefits determinations," the Relator should not be permitted to plead an FCA case. (Joint Statement, p. 9) But defendants provide no authority for this proposition and there is no authority to be found. OPM's actions under FEHBA may be challenged in an Article III court as arbitrary and capricious. See 5 CFR §8.90.107 (c) and (d). The fact that OPM does not have exclusive authority over benefit determinations makes DynCorp irrelevant to legally false claims as well.

**B.    Defendants' Argument That the Requirement of Accuracy in Determination in the Contract Bars A Finding of Fraud is Unsupported.**

In their Opposition to Relator's motion to amend on the ground of futility, Defendants cited United States v. Southland Management, 326 F. 3d 669 (5th Cir. 2003) (en banc) and argued that Southland stands for the simple proposition that when a contract explicitly addresses a certain claim of breach and provides a specific remedy, no FCA action will lie. Defendants' Opposition at 13.

7

But as Relator pointed out in his Reply, <u>Southland</u> was a case in which the contract at issue specifically provided a corrective action period for non-compliance, so that a claim made for payment before the corrective action period had expired could not be false. The <u>Southland</u> court held that "during the corrective action period, claims for housing assistant payment are not false claims because they are claims for money to which the parties are entitled (and which provide the wherewithal to both operate the property and to take the necessary corrective action." <u>Southland</u> 326 F. 3d at 626.

As the Government recognizes in its Statement of Interest, there is no "corrective action period" in the FEHB contract at issue. United States' Statement of Interest at 10.

In order to avoid the logic of the Relator's and the Government's papers, Defendants now shift their position, and argue that because the contract references a 95% accuracy determination rate, the accuracy requirement of the contract is the equivalent of the corrective action period in the <u>Southland</u> contract. But there is no basis for this argument. As the Government notes, "It is difficult, if not impossible, to see how <u>Southland Management</u> can have any application to the Relator's complaint." United States' Statement of Interest at 10.

The gravamen of this case is fraud, not error. Relator alleges that OPM was unaware of Defendants alleged practice of denying benefits. Relator agrees with the Government that Defendants' attempt to read <u>Southland Management</u> to foreclose FCA liability whenever contractual or regulatory remedies exist would "stretch the decision beyond recognition." Government Statement of Interest, at 5.

8

## IV.   CONCLUSION

The Government's Statement of Interest supports what Relator has argued:  that Relator has properly pled that the Defendants defrauded the Government by obtaining payment of a service charge based on representations that they had provided services required by contract, without providing them.  Relator reiterates that, given the requirement that the Court draw all inferences in Relator's favor in evaluating a Rule 12(b)(6) motion, the Court would commit reversible error were it to infer from the pleaded facts that OPM knew of Defendants' material breaches of services or that, even if such knowledge could be inferred, that it would shield Defendants from liability as a matter of law and thus warrant dismissal of the case on the pleadings.  The Motion to Amend should be granted and the Motion to Dismiss should be denied.

    Respectfully submitted,

    Relator, John M. Greabe

    By his attorneys,

    WIGGIN & NOURIE, P.A.

By: */s/ Richard B. McNamara*
    Richard B. McNamara, BBO#
    Stephanie A. Bray, BBO#650408
    670 North Commercial St., Suite 305
    P.O. Box 808
    Manchester, NH 03105
    (603) 669-2211

## CERTIFICATE OF SERVICE

       I, hereby certify that a copy of the foregoing Reply has been forwarded to all counsel of record pursuant to the Court's rules and procedures concerning electronic filing.  Any persons not receiving notification through ECF as noted on the Notification of Electronic Filing will be conventionally served via first class mail, postage prepaid:

Nicholas J. Nesgos
Jennifer Finger
Posternak, Blankstein & Lund, LLP
800 Boylston Street, Prudential Tower
Boston, MA 02199-8004

Anthony F. Shelley
Adam P. Feinberg
Miller & Chevalier Chartered
655 15th Street, NW, Suite 900
Washington, DC

Michael J. Tuteur
Lawrence M. Kraus
Foley & Lardner, LLP
111 Huntington Avenue
Boston, MA 02199

Patricia M. Connolly
Assistant United States Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210

Michael F. Hertz
Joyce R. Branda
Tracy L. Hilmer
U.S. Dept. of Justice, Civil Division
PO Box 261, Ben Franklin Station
Washington, D.C. 20044

Dated: June 16, 2006                    /s/ Richard B. McNamara
                                                        Richard B. McNamara, Esquire

00730043.DOC