UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. JOHN GREABE<br>    Plaintiff,<br><br>           v.<br><br>BLUE CROSS BLUE SHIELD<br>ASSOCIATION and ANTHEM BLUE<br>CROSS BLUE SHIELD OF NEW<br>HAMPSHIRE<br>    Defendants. | 04-CV-11355-MEL |

MEMORANDUM AND ORDER

LASKER, D. J.

   Blue Cross Blue Shield Association ("BCBSA") and Anthem Blue Cross Blue Shield of New Hampshire ("Anthem") entered into a contract with the government to provide health insurance to federal employees. One of the provisions of the contract requires BCBSA to adjudicate the validity of claims for health insurance benefits. In this case, Relator John Greabe ("Relator") contends that BCBSA has violated the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA") by making false or fraudulent representations and certifications that it has met its contractual obligations to adjudicate claims when in fact it has not done so.

   Relator sues to recover treble damages and civil penalties

on behalf of the United States arising from allegedly false statements and claims made by defendants to the United States in violation of the FCA. The Relator, a federal employee, asserts that the defendants have committed fraud on both enrollees and the government in relation to the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8901-8914 ("FEHBA") by summarily denying, without adjudication, all reimbursement for claims for medically necessary treatments for mental disorders made by beneficiaries of these healthcare programs.

The United States, through the federal Office of Personnel Management ("OPM"), has contracted to purchase from BCBSA, on behalf of federal employees who wish to enroll, a fee-for-service health insurance plan known as the Service Benefit Plan. BCBSA certifies in connection with its monthly claims for payment that it has provided the contracted-for services. One of the services for which OPM has contracted is adjudication of health insurance claims. Relator alleges, however, that BCBSA, acting through local agents such as Anthem New Hampshire, has designed and maintained a system that does not adjudicate certain claims. Specifically, the Service Benefit Plan provides claims coverage for all "medically necessary" speech, occupational and physical therapy. Relator alleges that, in administering the Service Benefit Plan and in overseeing the administration of all Blue Cross Blue Shield Plans, BCBSA has denied a broad class of claims

2

for speech, occupational and physical therapy submitted in connection with "mental disorder" diagnoses, even when such claims are for services that are medically necessary. It has done this by programming its computer system to deny payment automatically for all speech, occupational, and physical therapy associated with a mental disorder. Relator claims that because the defendants are not performing the adjudication services for which they claim payment, their monthly claims for payment are "false" within the meaning of the FCA.

Relator filed an amended complaint in December 2005 which defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). The defendants argue (1) that recovery as to the alleged FCA violations is precluded by FEHBA and OPM's exclusive control of decisions relating to benefits payable and carriers' conduct under FEHBA, and (2) that the amended complaint fails to plead an FCA violation with particularity as required by Rule 9(b). Relator responds that the suit pertains to penalties the government is entitled to collect under the FCA and makes no claim of improperly denied health benefits. Accordingly, Relator argues that the action is not governed by or limited to the exclusive remedies of FEHBA.

As to the Rule 9(b) issue, Relator contends further that the allegations of the amended complaint have been pled with sufficient particularity, and even more so in the second amended

complaint, which Relator moves for leave to file at this time and which provides further specifics as to the time, place, and content of the false representations based on information Relator has received since initiation of the suit.

## I. Preclusion by FEHBA and OPM

FEHBA establishes a "comprehensive administrative enforcement mechanism for review of disputed claims." Bridges v. Blue Cross Blue Shield Association, 935 F. Supp. 37, 42 (D.D.C. 1996). Under 5 C.F.R. §890.105(a), a covered individual whose health benefit claim has been denied by the carrier may ask OPM to review his claim. Furthermore, "FEHBA also provides that, if an enrollee is not satisfied with the OPM's resolution of his claim, he may file a judicial action against the OPM, not against the carrier." Id.

Defendants argue that, before suit may be instituted under the FCA, OPM must first decide whether the Relator is correct that all medically necessary claims for speech therapy associated with mental disorders are universally covered under the Services Benefit Plan. Citing Korbleur v. Group Hospitalization and Medical Services, Inc., 954 F.2d 705, 713 (11th Cir. 1992), defendants argue that "there could be no breach of either the plan or fiduciary duties unless Blue Cross was in fact obliged to cover the claims. Resolution of this dispute thus requires an interpretation of the plan - a task specifically delegated to OPM

4

under FEHBA.".

Relator responds that his claim does not seek interpretation of a plan or improperly denied health insurance benefits on behalf of any federal employees, and that, accordingly, OPM's role in evaluating health benefits disputes is immaterial. Relator argues that his allegations state a viable FCA claim as to the discrete proposition that BCBSA and Anthem falsely claimed an entitlement to money from the government that was not due and owing because BCBSA and Anthem did not perform the adjudication services required under the contract. Relator's FCA claim rests on two alternative theories: (1) that BCBSA's monthly claims are false or fraudulent because defendants have claimed entitlement to the entirety of the service charge that BCBSA withdrew despite knowing that the service charge had not been fully earned, and (2) that BCBSA's claims are false or fraudulent because BCBSA certified that it had materially complied with and accurately adjudicated claims despite knowing that it had not.

*          *          *

The decisive issue is whether BCBSA failed to adjudicate claims which it "falsely or fraudulently" claimed to have adjudicated. The allegations are that BCBSA contracted with the government to adjudicate health insurance claims, but nevertheless systematically denied a broad class of speech, occupational and physical therapy claims without any

5

adjudication. Although FEHBA delegates to OPM the authority to interpret plans, Relator's suit does not involve the normal case of a disputed health insurance claim which BCBSA properly adjudicated and then denied. Accordingly, contrary to defendants' position, a determination by OPM as to whether speech therapy claims associated with mental disorders are universally covered under the Services Benefit Plan is irrelevant and an unnecessary first step. This is a case where "the 'falsity' of the false statement is not dependent on interpretation and application of [FEHBA] regulations, [so] the current obstacle to FCA liability disappears." U.S. ex rel. Windsor v. Dyncorp, Inc., 895 F. Supp. 844, 852 (E.D. Va. 1995). FEHBA's remedies therefore do not preclude Relator's FCA claims.

## II. Rule 9(b)

Claims of fraud are subject to heightened pleading requirements. FRCP Rule 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally.

A plaintiff's claim of fraud must specify "the time, place, and content of the alleged false or fraudulent representations." U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004).

Defendants assert that Relator has not pled its FCA claims

with sufficient particularity. Defendants note the lack of dates as to when BCBSA filed allegedly false claims or used false records to receive payments. The amended complaint fails to specify who submitted claims, when the claims were submitted, or the amount of the claims. Defendants point out that even "'information and belief' allegations remain subject to the particularity requirements of Rule 9(b)." Id.

Relator asserts that, at the time of the initial filing, he was relying on verbal descriptions of the contract between the government and BCBSA because he is not, and never has been, an insider at BCBSA or Anthem. Only now does Relator possess full copies of the contract and accounting statements and certifications necessary to supply specifics regarding the time, place, and content of the allegedly false representations. Relator has included these specifics in its proposed second amended complaint, which now alleges that BCBSA made at least 73 false claims, one on the last day of each month between January 2000 and the present.

Relator was not a party to BCBSA's dealings with the government and the limitations of his knowledge are evident in his pleadings as to the particulars of the claims. However, because of Relator's position as an outside party, it is appropriate to consider that

> strict application of requirements of Rule 9(b) may be relaxed in certain circumstances. For

> instance, where facts underlying the fraud "are peculiarly within the defendant's control," a plaintiff may be excused from pleading the circumstances of the fraud with a high degree of precision. Boston & Me. Corp. v. Hampton, 987 F.2d 855, 866 (1st Cir. 1993). See also, Wilkins ex rel. U.S. v. Ohio, 885 F. Supp. 1055, 1061 (S.D. Ohio 1995)(allowing *qui tam* relator to plead certain facts on information and belief). In other instances, the alleged scheme of fraud may involve numerous transactions or transactions that occur over a long period of time, and pleading the specifics with regard to every instance of fraudulent conduct may be impractical.

U.S. ex rel. Franklin v. Parke-Davis, Division of Warner Lambert Co., 147 F. Supp. 2d 39, 47 (D. Mass. 2001). Relator's amended complaint is pled with sufficient particularity as to the alleged scheme. This is not a case in which a *qui tam* relator is presenting "general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery." Karvelas, 360 F.3d at 231. The amended complaint asserts the facts that constitute the fraud as to times, dates, and places.

Nevertheless, even if Relator's amended complaint were not considered to contain enough details to satisfy the demands of Rule 9(b), Relator's second amended complaint supplies additional specific details as to the time, place, and content of the false claims. Relator alleges that BCBSA has made at least 73 false claims from January 2000 to the present- BCBSA's monthly electronic withdrawals of the relevant portion of its negotiated service charge on the last day of each month.

8

### III. Elements of FCA Claim

The FCA, 31 U.S.C.A. §3729, holds liable any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

Additionally, the false or fraudulent representation must be material to the government's decision to sign the contract. See U.S. v. Data Translation, Inc., 984 F.2d 1256, 1267 (1st Cir. 1992)(finding materiality to be an element of FCA claims); Turner v. Johnson & Johnson, 809 F.2d 90, 95 (D. Mass. 1986)(finding that the materiality of the allegedly false or fraudulent statement is an element of a common law fraud claim).

Defendants assert that Relator has failed to plead an FCA violation because: (1) Relator has not shown that BCBSA's false or fraudulent claim certifications were material to the government's decision to pay BCBSA; and (2) the amended complaint lacks any factual allegations in order to support an FCA claim. Defendants contend that their actions may not have had an effect on the government's decision to pay the claims and thus the claims are immaterial. Defendants suggest that the amount at issue for speech therapy claims were such a tiny portion of the

9

work BCBSA performs in its contract with OPM that OPM would likely have overlooked the omission of such a small aspect of the overall services rendered by BCBSA. Defendants also assert that OPM knew that BCBSA was systematically denying the claims at issue and nevertheless was willing to pay BCBSA the full amount for its services.

Relator responds that the amended complaint states that BCBSA's claims were false or became false when BCBSA accepted payment for its claims and certified its entitlement to payment for services rendered. Additionally, defendants' implication that the false representations were immaterial require an unwarranted presumption that OPM did not mind paying full price despite BCBSA's omission of services.

Defendants' assertions do not constitute grounds for dismissal. They may be considered as defenses at a later time, but given the allegations before the Court at this time, there is no basis to assume that OPM either knew of BCBSA's omission of services or that it paid the full amount of BCBSA's claims despite knowing that BCBSA was not adjudicating certain claims.

The complaint also contains the facts of BCBSA's allegedly fraudulent scheme in a manner which is sufficient to form the basis for an FCA claim.

\*           \*           \*

Accordingly, defendants' motion to dismiss the amended

complaint is DENIED and Relator's motion to file a second amended complaint is GRANTED.

It is so ordered.

Dated:   January 25, 2007

Boston, Massachusetts        /s/ Morris E. Lasker

U.S.D.J.