UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. JOHN M. GREABE,<br><br>            Plaintiff,<br><br>vs.<br><br>BLUE CROSS AND BLUE SHIELD<br>ASSOCIATION and ANTHEM BLUE<br>CROSS BLUE SHIELD OF NEW<br>HAMPSHIRE,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. 04-11355-MEL |

**DEFENDANTS' OPPOSITION TO RELATOR'S
MOTION TO POSTPONE COMPUTATION OF DAMAGES REQUIRED
BY F.R.C.P. 26(a)(1) AND OF THE SETTLEMENT PROPOSAL
<u>REQUIRED UNDER L.R. 16.1(c)</u>**

Through his motion, Relator John Greabe ("Greabe") asks this Court to permit him to take *fifteen months* of expensive, burdensome discovery of the defendants before coming forward with *any* calculation of damages – as required by Rule 26(a)(1) – or even a bona fide settlement demand – as this Court requires under L.R. 16.1(c). Greabe justifies his motion on the grounds that this case is "complex," and that the False Claims Act ("FCA") "does not specify how to quantify damages." Motion at 2, ¶ 3. Were these the touchstones for waiving the requirements of the Rules (as well as Section 1.02 of this Court's Expense and Delay Reduction ("EDR") Plan),[1] a huge number of cases (and, of course, virtually all FCA cases) would qualify for an exemption – an outcome plainly inconsistent with the Rules' and this Court's objectives. Especially where, as here, the alleged "damages" suffered by the Government appear to be

---

[1] Local Rule 16.1(c) is identical to Section 1.02(c) of the EDR Plan.

negligible to non-existent, this Court should order Greabe to promptly provide defendants with his calculation of damages, as required by Rule 26(a)(1), and also make a good faith, bona fide settlement demand, as required by L.R. 16.1(c) and EDR Section 1.02.  In the alternative, if Greabe is genuinely incapable of calculating damages or offering terms of settlement at this time, this Court should bifurcate discovery and order that it be limited solely to those issues bearing directly on damages until Greabe is, in fact, capable of complying with the Rules.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves the Federal Employee Health Benefits Act ("FEHBA").  Greabe claims that defendants Blue Cross and Blue Shield Association ("BCBSA") and Anthem Blue Cross Blue Shield of New Hampshire ("ANH") conspired to commit fraud on both enrollees[2] and the United States Office of Personnel Management ("OPM") by summarily denying, without any "adjudication," all reimbursement for claims for medically necessary speech, occupational, and physical therapy whenever those treatments were associated with a "mental disorder."  Am. Compl. ¶¶ 85, 86.  Greabe asserts that OPM was allegedly damaged because the defendants are purportedly not performing some small portion of the adjudication services they promised to perform under their contract with OPM.[3]

---

[2] While Greabe occasionally refers to the alleged fraud committed against "enrollees," he lacks standing in this False Claims Act case to seek any damages on the enrollees' behalf.  *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 376 F. Supp. 2d 617, 641, 646 (E.D. Va. 2005).  The only damages that Greabe can attempt to seek are those allegedly suffered by the Government itself.  *Id.*

[3] While the merits of this case are beyond the scope of this motion, it bears mention that Greabe's allegations are untrue: the evidence will show that BCBSA has *not* programmed its computers to "automatically deny" all medically necessary therapy claims that are associated with a "mental disorder," nor has ANH, in fact, failed to "adjudicate" all such claims.  Given this, it seems extraordinarily wasteful for the parties to engage in fifteen months of fact and expert discovery, as Greabe proposes, before Greabe even discloses an *estimate* of the alleged damages, or makes a reasonable settlement demand to the defendants.

In his Motion, Greabe seeks this Court's leave to postpone, through the middle of expert discovery, the automatic disclosure of damages required by F.R.C.P. 26(a)(1). Greabe also seeks leave to postpone, for the same period, making the settlement demand required by L.R. 16.1(c) and ERD Plan Section 1.02. Greabe's only bases for seeking the postponements are that "[e]ach case under the FCA involves a unique type of damage to the government," Motion at 4; "expert opinion will be necessary to quantify the harm," Motion at 5; and that, because he is not an "insider" at OPM, BCBSA or ANH, "the Relator is unable to create the 'formula' necessary to compute damages in this case and produce a settlement proposal," id.

Meanwhile, Greabe has already served BCBSA and ANH with extraordinarily broad discovery requests. The discovery seeks information and responsive documents from *June 1998 to the present*, and requests, for example, the identity of "*each and every employee and/or agent or individual working on behalf of BCBSA since June 16, 1998* who has knowledge of the *procedures, processes, operations and methods utilized to adjudicate claims for reimbursement* coverage for speech, occupational, and physical therapy with a corresponding 'mental disorder' diagnosis code";[4] and "[e]xecutable copies of *any and all versions and revisions of computer programs, software, or applications* utilized by BCBSA to evaluate, adjudicate, handle or process any claims for reimbursement coverage for speech, occupational, and physical therapy with a corresponding 'mental disorder' diagnosis code *from June 16, 1998 to the present* … along with … a copy of any *virtual machine, translation software, compiler, or other application or utility required to run or read the programs*, software, or applications within a Microsoft

---

[4] Relator's First Set of Interrogatories to be Answered by Defendant Blue Cross and Blue Shield Association, No. 3 (emphasis added), attached hereto as Exhibit A.

BOST_258777.3

Windows system environment … [and] copy of any corresponding installation or user manuals for [such] software."[5]

**ARGUMENT**

I.  The Rules Contemplate an Early Assessment of Damages and Settlement In Order to Avoid Needlessly Long, Expensive and Burdensome Litigation

In enacting the automatic disclosure requirements of F.R.C.P. 26(a)(1), the drafters of the Rules made their objectives plain: "[T]his subdivision imposes on parties a duty to disclose, without awaiting formal discovery requests, certain basic information that is needed in most cases to prepare for trial *or make an informed decision about settlement*.... A major purpose of the revision *is to accelerate the exchange of basic information about the case* and to eliminate the paper work involved in requesting such information, *and the rule should be applied in a manner to achieve those objectives.*" F.R.C.P. 26, Advisory Committee Notes (emphasis added). As Moore's Federal Practice states: "A party claiming damages must, of course, have some evidence that an injury occurred and some basis for calculating the damages the party suffered as the result of that injury before filing suit. The party making such a claim, therefore, *has the obligation*, when it makes its initial disclosure, to disclose to the other parties the best information then available to it concerning that claim, however limited and potentially changing it may be." 6-26 Moore's Federal Practice – Civil § 26.22[4][c] (emphasis added).

This Court had similar objectives when it first promulgated Section 1.02 of its Expense and Delay Reduction Plan, and then enacted Local Rule 16.1(c). The EDR Plan, enacted in 1991 pursuant to the Civil Justice Reform Act of 1990, was designed "to facilitate deliberate adjudication of civil cases on the merits, monitor discovery, improve litigation management, and

---

[5] First Set of Requests for Production of Documents to be Answered by Defendant Blue Cross and Blue Shield Association, Request No. 5 (emphasis added), attached hereto as <u>Exhibit B</u>.

4

ensure *just, speedy and inexpensive resolutions of civil disputes*." Civil Justice Reform Act of 1990, 28 U.S.C. § 471. To that end, the EDR Plan for this Court stated that "four [of its] core objectives … are (1) *to explore the parties' receptivity to and propriety of settlement*, (2) to identify or formulate the principal issues in contention, thereby narrowing the contested legal or factual issues, and possibly paving the way for *more expedited discovery and even settlement*, (3) to prepare a discovery schedule and plan that sets out *concisely and firmly the requirements of litigants*, counsel, and the court, and (4) to set time limits for the completion of discovery." EDR Plan, Rule 1.02, Comment (emphasis added).

Nothing in these Rules, nor in the Comments of the drafters, establishes a special exemption for FCA cases. Indeed, given that the FCA is subject to the heightened pleading requirements of Rule 9(b), *U.S. ex rel. Karvelas v. Melrose-Knudsen Co.*, 360 F.3d 220, 227-28 (1st Cir. 2004), it appears that the Relator should be more, rather than less, informed about the elements of his claims. Moreover, given that FCA claims inevitably inflict the taint of "fraud" upon the defendants, it is all the more reasonable to expect both the parties and the court to consider and resolve such cases with dispatch.

It should not, in any event, be extraordinarily difficult for Greabe to comply with his obligations here. In earlier filings, Greabe already identified those "claims" of the defendants that he alleges were false; accordingly, he can easily tally the amount of alleged penalties called for under the FCA. With respect to the "damages" themselves – i.e., the amount by which OPM was "harmed" by the alleged failure of the defendants to "adjudicate" therapy claims associated with mental disorders – the principal source for this information will be the Government itself. With this case already three years old, it should not be too much to ask the Relator to make

5

BOST_258777.3

inquiry of the Government to determine how much, if any, OPM would have reduced its contract price if it had known the alleged facts set forth in Greabe's Complaint.

By contrast, allowing Greabe's request for postponement will guarantee that the parties – but especially the defendants – will be mired in costly and burdensome discovery for at least the next fifteen months. Under Greabe's proposed timetable, before he is required even to estimate damages and make a settlement demand, defendants will have had to scour their files and warehouses back to June 1998, produce hundreds of thousands of pages of paper and electronic documents, procure numerous witnesses for deposition, and hire experts to consider and rebut Greabe's claims. Yet, as noted earlier, the evidence is likely to show that the Government suffered no actual damage of any kind.

For all these reasons, defendants respectfully request that the Court deny Greabe's Motion to Postpone and require that, consistent with this Court's rules, he disclose forthwith his damages calculation and submit a good faith settlement demand to the defendants.

II.     In the Alternative, Defendants Request Bifurcated Discovery

If the court does not require Greabe to set forth his damages and settlement demand promptly, defendants request alternatively that this Court order discovery be limited solely to those issues bearing directly on damages until Greabe is, in fact, capable of complying with the Rules. At that point, it may well be possible to determine whether Greabe can prove sufficient "damage" to the Government to satisfy the materiality element of the FCA. *U.S. v. Data Translation, Inc.*, 984 F.2d 1256, 1267 (1st Cir. 1992). Alternatively, there may be an opportunity at that point for all parties to consider whether the amount of alleged damages continues to warrant the burdens and costs of plenary discovery.

## **CONCLUSION**

For the foregoing reasons, this Court should deny the Relator's Motion to Postpone Computation of Damages Required By F.R.C.P. 26(a)(1) and of the Settlement Proposal Required Under L.R. 16.1(c).

Dated: August 17, 2007

Respectfully submitted,

/s/ Nicholas J. Nesgos
Nicholas J. Nesgos, BBO No. 553177
nnesgos@pbl.com
Jennifer Finger, BBO No. 641830
jfinger@pbl.com
Posternak Blankstein & Lund LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-8004
Telephone: (617) 973-6100
Fax: (617) 367-2315

Anthony F. Shelley
ashelley@milchev.com
Adam P. Feinberg
afeinberg@milchev.com
Miller & Chevalier Chartered
655 15th Street, NW
Suite 900
Washington, DC 20005
Telephone: (202) 626-6800
Fax: (202) 628-0858

*Counsel for Defendant Blue Cross Blue Shield Association*

/s/ Michael J. Tuteur
Michael J. Tuteur, BBO No. 543780
mtuteur@foley.com
Lawrence M. Kraus, BBO No. 564561
lkraus@foley.com
Foley & Lardner LLP
111 Huntington Avenue
Boston, MA 02199
Telephone: 617-342-4000
Fax: 617-342-4001

*Counsel for Defendant Anthem Blue Cross Blue Shield of New Hampshire*

8

9

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to those indicated as non registered participants on this date, August 17, 2007.

      /s/   Michael J. Tuteur