# EXHIBIT A

WIGGIN & NOURIE, P.A.
670 N. Commercial Street, Suite 305
P.O. Box 808
Manchester, NH 03105-0808
(603) 669-2211

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JOHN M. GREABE, <br><br> Plaintiffs <br><br> v. <br><br> BLUE CROSS BLUE SHIELD ASSOCIATION and ANTHEM BLUE CROSS BLUE SHIELD OF NEW HAMPSHIRE <br><br> Defendants | Civil Action No. 04-11355 MEL |

### RELATOR'S FIRST SET OF INTERROGATORIES TO BE ANSWERED BY DEFENDANT BLUE CROSS BLUE SHIELD ASSOCIATION

TO:  Adam P. Feinberg, Esquire           Nicholas J. Nesgos, Esquire
     Anthony F. Shelley, Esquire          Jennifer Finger, Esquire
     Miller & Chevalier Chartered         Posternack, Blankstein & Lund
     655 15th Street, NW, Suite 900       800 Boylston Street
     Washington, DC 20005                 Boston, MA 02199-8004

COUNSEL:

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, the Relator, John M. Greabe, hereby requests that the Defendant, Blue Cross Blue Shield Association answer the Interrogatories propounded below within thirty (30) days from the date of service of these discovery requests. These Interrogatories are continuing in nature and any

additional information or documents that are discovered subsequent to the filing of the Defendant's responses, which would have been included had they been known or available at the time the responses were made, are to be supplied by supplemental responses.

### DEFINITIONS AND INSTRUCTIONS

The term "document" is used herein in the broadest sense permitted under the applicable rules of procedure. It means any written, printed, recorded, or graphic matter, however produced or reproduced, or any tangible thing that in whole or in part illustrates or conveys information, including, but not limited to, correspondence, reports, records, lists, memoranda, microfilms, microfiches, spreadsheets, emails, invoices, checks, check stubs, ledgers, financial journals, financial statements, purchase orders, sales slips, books, drafts, letters, telegrams, catalogues, manuals, brochures, pamphlets, schedules, calendars, summaries or records of telephone conversations or interviews, diaries, graphs, plans, drawings, notebooks, photographs, x-ray images, motion picture film, videotape, audio or video recordings of any kind, however made, maps, advertisements, press releases, summaries or reports of investigations or negotiations, opinions or reports of consultants, appraisals, and recordings of any other type. "Document" also includes information stored on or in any computer or word processing system or in or on any other electronic media and any data compilations from which information can be obtained, translated, if necessary, by the respondent. This term shall include all non-identical copies and drafts of each document request. Any handwritten marking or notation in any form on a document shall render that document "non-identical" to a copy of the document that lacks such handwriting.

The term "concerning," as used herein, shall include, but is not limited to referring to, relating to, embodying, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, constituting, illustrating, depicting, summarizing, mentioning, recording, evidencing, supporting, contradicting or rebutting, directly or by inference.

The term "communication" means any oral or written exchange of information, or request for information between more than one person, by any means, and includes notes and/or documents made for the purpose of recording a communication.

The terms "identify" and "state" mean:

    a.    with respect to a person, to set forth the person's full name, present or last known address, telephone number, and,

2

with respect to a natural person, his or her present or last known place of employment;

b.   with respect to a document, either to provide a copy of the document or set forth: (a) the type of document; (b) the medium in which the information is stored; (c) the subject matter of the document; (d) the persons who have the document in their possession, custody or control; (e) the date of the document; and (f) the author, addressees and recipients;

The abbreviation "BCBSA" and the phrase "the Association," as used herein, may be used interchangeably and shall be taken to refer to the Defendant "Blue Cross Blue Shield Association."

The term "Anthem of New Hampshire," as used herein, shall be taken to refer to the Defendant "Anthem Blue Cross Blue Shield of New Hampshire."

The abbreviation "OPM," as used herein, shall be taken to refer to the United States Office of Personnel Management.

The phrase "the Contract," as used herein, shall be taken to refer to contract CS 1039 between OPM and the Association.

"You" and "your" means the Blue Cross Blue Shield Association, including any and all agents, employees, and other persons acting or purporting to act, or having acted or purported to act, directly or indirectly, on behalf of one or more of such Blue Cross Blue Shield Association.

As used herein, all words in the singular shall be construed also to include the plural and vice versa, and all words in either the masculine, feminine or neuter shall be construed also to include the other gender.

The words "and" and "or" shall be construed conjunctively, disjunctively or both as necessary to give the particular request or interrogatory the broadest and most inclusive scope. The word "any" shall be construed to include the word "all" and vice versa.

In responding to the following interrogatories, you are requested to furnish all information that is available to you, including all information in the possession of your attorneys, agents, investigators, representatives or anyone acting in cooperation or in concert with you or on your behalf, including experts consulted or retained.

3

If you cannot answer any interrogatory completely, answer as much as possible, with an explanation as to why the remainder of the interrogatory cannot be answered.

These interrogatories are to be regarded as continuing in nature. You are requested to provide, by way of supplementary responses hereto, such additional information as you or your attorneys, agents, investigators, representatives, or anyone acting in cooperation or in concert with you or on your behalf, including experts consulted or retained, may hereafter obtain which are responsive to any of these interrogatories.

Unless otherwise specified, the time frame for all information requested in these interrogatories extends from June 16, 1998 to the present.

## INTERROGATORIES

1.    Please describe with specificity, omitting nothing, the knowledge possessed by each of the following individuals identified in your initial disclosures made pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure of any facts relevant to the claim or defense of any party:

    a. Denise Burrows

    b. Sandra Thomas

    c. Christina Speaks

    d. Kelly Feeny

    e. Richard LaFleur

    f. Pam Letizi

    g. Lisa Twohig (a/k/a Lisa Twohig Roussel)

    h. Barbara Holley

**Answer:**

2.    Do you admit, as set forth in paragraph 82 of the *Second Amended Complaint*, that BCBSA programmed its computers to shunt aside and not adjudicate claims for speech, occupational, and physical therapy when the claim forms by which reimbursement coverage is sought contain corresponding "mental disorder" diagnosis codes? If your answer to the foregoing question is anything other than an unqualified "yes," then please describe with particularity the procedures, processes, operations, and methods utilized to adjudicate a claim for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code.

**Answer:**

3. Please identify each and every present and former employee and/or agent or individual working on behalf of BCBSA since June 16, 1998 who has knowledge of the procedures, processes, operations, and methods utilized to adjudicate claims for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code.

**Answer:**

4. Please identify each and every individual within BCBSA responsible for writing, producing, editing, compiling, and transmitting any guidelines, manuals, written procedures, recorded processes, handbooks, written instructions, operating guides, or any other documents that BCBSA has sent to, imposed upon, or promulgated upon Anthem of New Hampshire and all other locally operated "Member Plans," "Local Plans," or "Blue Plans" from June 16, 1998 to the present regarding the handling or processing of claims for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code.

**Answer:**

5. Please identify those individuals working for or on behalf of BCBSA with knowledge of programming any computer software or application used to evaluate, adjudicate, handle, or process any claims for reimbursement and those individuals with knowledge of the setup or modification of the parameters within any such computer software or application.

**Answer:**

6. Identify all those individuals working for or on behalf of BCBSA responsible for or in any way involved with creating the "override" (or similar process,

however entitled or identified) described in paragraphs 72 and 73 of the *Second Amended Complaint* that provided reimbursement coverage for Luke Greabe's treatments.

**Answer:**

7. With regard to cases or claims in which the OPM has reversed a decision or adjudication by BCBSA or Anthem of New Hampshire denying reimbursement coverage for speech, occupational, and/or physical therapy with a corresponding "mental disorder" diagnosis code, please:

   a. identify the total number of instances or occasions on which the OPM has reversed a decision or adjudication by BCBSA denying coverage for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code;

   b. provide for each claimant whose claim for reimbursement was originally denied by BCBSA or Anthem of New Hampshire, the diagnosis code included in the claim denied by BCBSA or Anthem of New Hampshire, the type of therapy sought or obtained by each claimant, and the docket number, tracking number, claim number, or other internal identifying number for each claim or case included in the number provided in response to subsection "a."

**Answer:**

7

8.  Please state the total number of claims that have been made or presented by claimants and enrollees residing in New Hampshire for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code since June 16, 1998.

   a. Out of those claims for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code originating in New Hampshire, please identify how many have been denied by BCBSA or Anthem of New Hampshire.

   b. Of these claims by New Hampshire claimants and enrollees for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code that have been denied, please state the total number of claims on which the OPM reversed the decision of BCBSA or Anthem of New Hampshire to deny coverage.

**Answer:**

9.  Please state the total number of claims that have been made or presented by claimants and enrollees within the United States for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code since June 16, 1998.

   a. Out of those claims for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code originating in the United States, please identify how many have been denied by BCBSA or Anthem of New Hampshire.

   b. Of these claims for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code that have been denied, please state the total number of claims on which the OPM reversed the decision of BCBSA or Anthem of New Hampshire to deny coverage.

**Answer:**

10. Please identify all facts on which you base the assertion on page 17 of your *Joint Opposition to Relator's Motion to File Second Amended Complaint* that "...OPM knew about the alleged pattern of improper claims denial...".

**Answer:**

11. Do you contend that OPM was aware, prior to the filing of the initial Complaint in this matter, of the conduct alleged in the initial and amended Complaints including, but not limited to, the alleged failure to adjudicate certain claims presented to you? If your answer to the foregoing question is anything other than an unqualified "no," then please set forth any and all facts upon which you base this contention.

**Answer:**

Respectfully submitted,

**JOHN M. GREABE, RELATOR**

by his attorneys,

**WIGGIN & NOURIE, P.A.**

Dated: 8/3/07        by: _____
Richard B. McNamara BBO #339420
Stephanie A. Bray, BBO#650408
P.O. Box 808
Manchester, NH 03105-0808
(603) 669-2211

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of the foregoing Relator's First Set of Interrogatories to be Answered by Defendant Blue Cross Blue Shield Association has been forwarded to counsel for Defendant Blue Cross Blue Shield Association by email and U.S. Mail:

Nicholas J. Nesgos
Jennifer Finger
Posternak, Blankstein & Lund, LLP
800 Boylston Street, Prudential Tower
Boston, MA 02199-8004

Anthony F. Shelley
Adam P. Feinberg
Miller & Chevalier Chartered
655 15th Street, NW, Suite 900
Washington, DC

Dated: 8/3/67, 2007

Richard B. McNamara

00832597.DOC

11