# EXHIBIT B

WIGGIN & NOURIE, P.A.
670 N. Commercial Street, Suite 305
P.O. Box 808
Manchester, NH 03105-0808
(603) 669-2211

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JOHN M. GREABE,<br><br>Plaintiffs<br><br>v.<br><br>BLUE CROSS BLUE SHIELD ASSOCIATION and ANTHEM BLUE CROSS BLUE SHIELD OF NEW HAMPSHIRE<br><br>Defendants | Civil Action No. 04-11355 MEL |

### RELATOR'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO BE ANSWERED BY DEFENDANT BLUE CROSS BLUE SHIELD ASSOCIATION

TO: Adam P. Feinberg, Esquire          Nicholas J. Nesgos, Esquire
    Anthony F. Shelley, Esquire         Jennifer Finger, Esquire
    Miller & Chevalier Chartered        Posternack, Blankstein & Lund
    655 15th Street, NW, Suite 900      800 Boylston Street
    Washington, DC 20005                Boston, MA  02199-8004

COUNSEL:

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, the Relator, John M. Greabe, hereby requests that the Defendant, Blue Cross Blue Shield Association respond to the Requests for Production of Documents propounded below within thirty (30) days

from the date of service of these discovery requests. These Requests for Production are continuing in nature and any additional documents discovered subsequent to the filing of the Defendant's responses, which would have been included had they been known or available at the time the responses were made, are to be supplied by supplemental responses.

## DEFINITIONS AND INSTRUCTIONS

The term "document" is used herein in the broadest sense permitted under the applicable rules of procedure. It means any written, printed, recorded, or graphic matter, however produced or reproduced, or any tangible thing that in whole or in part illustrates or conveys information, <u>including, but not limited</u> to, correspondence, reports, records, lists, memoranda, microfilms, microfiches, spreadsheets, emails, invoices, checks, check stubs, ledgers, financial journals, financial statements, purchase orders, sales slips, books, drafts, letters, telegrams, catalogues, manuals, brochures, pamphlets, schedules, calendars, summaries or records of telephone conversations or interviews, diaries, graphs, plans, drawings, notebooks, photographs, x-ray images, motion picture film, videotape, audio or video recordings of any kind, however made, maps, advertisements, press releases, summaries or reports of investigations or negotiations, opinions or reports of consultants, appraisals, and recordings of any other type. "Document" also includes information stored on or in any computer or word processing system or in or on any other electronic media and any data compilations from which information can be obtained, translated, if necessary, by the respondent. This term shall include all non-identical copies and drafts of each document request. Any handwritten marking or notation in any form on a document shall render that document "non-identical" to a copy of the document that lacks such handwriting.

The term "concerning," as used herein, shall include, but is not limited to referring to, relating to, embodying, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, constituting, illustrating, depicting, summarizing, mentioning, recording, evidencing, supporting, contradicting or rebutting, directly or by inference.

The term "communication" means any oral or written exchange of information, or request for information between more than one person, by any means, and includes notes and/or documents made for the purpose of recording a communication.

The terms "identify" and "state" mean:

     a.    with respect to a person, to set forth the person's full name, present or last known address, telephone number, and, with respect to a natural person, his or her present or last known place of employment;

     b.    with respect to a document, either to provide a copy of the document or set forth: (a) the type of document; (b) the medium in which the information is stored; (c) the subject matter of the document; (d) the persons who have the

document in their possession, custody or control; (e) the date of the document; and (f) the author, addressees and recipients;

The abbreviation "BCBSA" and the phrase "the Association," as used herein, may be used interchangeably and shall be taken to refer to the Defendant "Blue Cross Blue Shield Association."

The term "Anthem of New Hampshire," as used herein, shall be taken to refer to the Defendant "Anthem Blue Cross Blue Shield of New Hampshire."

The abbreviation "OPM," as used herein, shall be taken to refer to the United States Office of Personnel Management.

The phrase "the Contract," as used herein, shall be taken to refer to contract CS 1039 between OPM and the Association.

"You" and "your" means the Blue Cross Blue Shield Association, including any and all agents, employees, and other persons acting or purporting to act, or having acted or purported to act, directly or indirectly, on behalf of one or more of such Blue Cross Blue Shield Association.

Unless otherwise specified, each request is for documents in your possession, custody or control, or that of your agents or representatives, including, without limitation, accountants, attorneys, employers and investigators, wherever located. As to any document relating to the matters described herein which is not in your possession, custody or control, but which you know to exist, you are requested to identify such document (including, where applicable, the date, general description, the author and addressee) and indicate to the best of your ability its present or last known location or custodian.

All documents which are produced shall be produced as they are kept in usual course of business and be organized and labeled to correspond with the categories in the request to which they are responsive.

Legible copies are requested to be produced in all instances.

As used herein, all words in the singular shall be construed also to include the plural and vice versa, and all words in either the masculine, feminine or neuter shall be construed also to include the other gender.

The words "and" and "or" shall be construed conjunctively, disjunctively or both as necessary to give the particular request or interrogatory the broadest and most

4

inclusive scope. The word "any" shall be construed to include the word "all" and vice versa.

If the responding party knows of the location of any requested document but does not produce the document on the ground that the document is not in the responding party's possession, custody, or control, the responding party shall identify the document and identify the person who the responding party believes does have possession, custody, or control of the document.

If the responding party knows of the location of any requested document but does not produce the document on the ground that the document is privileged, the responding party shall compile a log or index identifying with respect to each such document:

    a. The creator;
    b. The recipient;
    c. The general subject matter;
    d. The date;
    e. Its location; and
    f. The nature of the privilege.

In responding to the following requests for production of documents, you are requested to furnish all information that is available to you, including all information in the possession of your attorneys, agents, investigators, representatives or anyone acting in cooperation or in concert with you or on your behalf, including experts consulted or retained.

If you cannot respond to any request completely, provide as much information as possible with an explanation as to why the remainder of the request cannot be satisfied.

These requests for production are to be regarded as continuing in nature. You are requested to provide, by way of supplementary responses hereto, such additional information as you or your attorneys, agents, investigators, representatives, or anyone acting in cooperation or in concert with you or on your behalf, including experts consulted or retained, may hereafter obtain which are responsive to any of these requests.

Unless otherwise specified, the time frame for all information requested in these requests for the production of documents extends from June 16, 1998 to the present.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.  Any and all documents, data compilations, and tangible things identified in subsection "B" of your initial disclosures made pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure.

2.  Any and all documents pertaining to the procedures, processes, operations, and methods utilized by BCBSA in connection with the adjudication of claims for reimbursement for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code.

3.  Any and all guidelines, manuals, written procedures, recorded processes, handbooks, written instructions, operating guides, or any other documents that BCBSA sent to, imposed upon, or promulgated upon Anthem of New Hampshire and all other locally operated "Member Plans," "Local Plans," or "Blue Plans" from January 1, 2000 to the present regarding the handling or processing of claims for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code. Please provide the final or version or draft of all such documents produced in response to this request along with any and all operating or working drafts that may have been produced.

4.  Any and all guidelines, manuals, written procedures, recorded processes, handbooks, written instructions, operating guides, or any other documents that BCBSA sent to, imposed upon, or promulgated upon Anthem of New Hampshire and all other locally operated "Member Plans," "Local Plans," or "Blue Plans" from January 1, 2000 to the present regarding the handling or processing of all claims for reimbursement coverage. Please provide the final version or draft of all such documents produced in response to this request along with any and all operating or working drafts that may have been produced.

5. Executable copies of any and all versions and revisions of the computer programs, software, or applications utilized by BCBSA to evaluate, adjudicate, handle, or process any claims for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code from June 16, 1998 to the present. Provide along with your response to this request a copy of any virtual machine, translation software, compiler, or other application or utility required to run or read the programs, software, or applications within a Microsoft Windows system environment. Please also provide a copy of any corresponding installation and user manuals for the software produced in response to this request.

6. For each and every case or claim involving a claim for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code in which the OPM reversed a decision or adjudication by BCBSA or Anthem of New Hampshire to deny coverage, please provide copies of any and all documents pertaining to the OPM's reversal.

7. For the period from June 16, 1998 to the present any and all records, logs, receipts, transaction reports, notes, ledger entries, and any other documents concerning the withdrawals by BCBSA on the last day of each month from the letter of credit account BCBSA manages as part of administering the federal Service Benefits Plan pursuant to the Contract (CS 1039).

8. Any and all other documents not yet produced relating to BCBSA's monthly "claims" for its negotiated service charge. For purposes of this request, a "claim" includes a charge against the Contract for approval or payment.

9. All certifications BCBSA has sent or has caused to be sent to the United States Government pursuant to Contract CS 1039 since June 16, 1998.

10. Any and all accounting statements sent to OPM by BCBSA since June 16, 1998, including those used to "true up" the final amounts due and owing under the Contract.

11. Any and all documents or other records generated as a result of, relied upon during, or in any way concerning the following communications between the Relator or his wife, Martha Madsen (a/k/a Martha Madsen Greabe), and one or more of the Defendants, BCBSA and Anthem of New Hampshire (all paragraphs referenced within this request are found in the *Second Amended Complaint*):

   a. phone call from Ms. Madsen to Anthem of New Hampshire referenced in paragraphs 38 and 39 seeking "prior authorization" of speech therapy prior to November of 1999;

   b. phone call referenced in paragraph 44 from Ms. Madsen to Anthem of New Hampshire in or about March of 2000;

   c. phone call from the Relator to Anthem of New Hampshire in or about March of 2000 and referenced in paragraph 45;

   d. phone call from Relator to Anthem of New Hampshire detailed in paragraphs 51-53 and following the May 30, 2000 denial of pre-certification letter sent by Richard LaFleur, M.D.;

   e. phone call between Anthem of New Hampshire and the Relator during July of 2000 and referenced in paragraph 55;

   f. phone call from Relator to Anthem of New Hampshire in September of 2000 referenced in paragraph 56;

   g. phone call from Relator to Anthem of New Hampshire following the OPM reversal of the denial of coverage in March 3, 2001 as referenced in paragraph 63;

   h. phone call from the Relator to Pam Letizi at Anthem of New Hampshire on June 27, 2001 referenced in paragraph 65;

   i. two phone conversations between the Relator and Lisa Twohig (a/k/a Lisa Twohig Roussel) on July 2, 2001 referenced in paragraphs 66-67;

   j. phone call from Relator to customer service phone number 1-800-531-4450 on July 24, 2001 referenced in paragraph 68;

   k. conversation between Relator and Kelly Feeny on July 24, 2001 referenced in paragraph 69;

    l.  phone call from Relator to Anthem of New Hampshire on April 13, 2004 referenced in paragraph 74;

    m.  phone call from Linda at Anthem of New Hampshire to Relator on April 15, 2004 and referenced in paragraph 75.

12. Any and all documents generated by Richard LaFleur, M.D., in connection with the denial on May 30, 2000 of the Relator's request for pre-certification of Luke Greabe's proposed therapy sessions referenced in paragraph 51 of the *Second Amended Complaint*.

13. Any and all documents upon which Dr. Richard LaFleur relied or which he referenced in connection with issuing a denial to the Relator in response to the Relator's request for pre-certification as described in paragraph 51 of the *Second Amended Complaint*.

14. Any and all documents in your possession, custody, or control that evidence, refer or relate to OPM's reversal on March 5, 2001 of the denial of coverage for Luke Greabe's treatments. Include any and all documents relied upon, referenced, or generated by Kelly Feeny in connection with her acknowledgement on April 9, 2001 of OPM's reversal as described in paragraph 61 of the *Second Amended Complaint*.

15. Any and all documents relied upon, referenced, or generated in connection with Anthem of New Hampshire's denial on June 27, 2001 of coverage for Luke Greabe's treatments during the summer of 2000 as described in paragraph 64 of the *Second Amended Complaint*.

16. Any and all documents pertaining to communication between OPM and either BCBSA or Anthem of New Hampshire concerning claims for reimbursement coverage for speech, occupational, and physical therapy with a corresponding "mental disorder" diagnosis code.

17. Any and all documents concerning the Relator, Martha Madsen (a/k/a Martha Madsen Greabe), Luke Greabe, or the Relator's claims for reimbursement submitted to BCBSA or Anthem of New Hampshire.

18. Any and all files, records, or other documents concerning any and all contacts between the Relator or anyone working on behalf or for the Relator and the Defendants, BCBSA and Anthem of New Hampshire.

19. Any and all documents concerning, generated in connection with, or relied upon in connection with the decision by BCBSA or Anthem of New Hampshire to deny coverage to the Relator for claims for reimbursement coverage for speech, occupational, and physical therapy for Luke Greabe.

20. Any and all documents concerning, generated in connection with, or relating to the implementation or creation of the "override" (or similar process, however entitled or identified) described in paragraphs 72 and 73 of the *Second Amended Complaint* that provided reimbursement coverage for Luke Greabe's treatments.

Respectfully submitted,

**JOHN M. GREABE, RELATOR**

by his attorneys,

**WIGGIN & NOURIE, P.A.**

Dated: 8/3/07    by: /s/ Richard B. McNamara

Richard B. McNamara, BBO#339420
Stephanie A. Bray, BBO#650408
P.O. Box 808
Manchester, NH  03105-0808
(603) 669-2211

## CERTIFICATE OF SERVICE

I, hereby certify that a copy of the foregoing Relator's First Set of Requests for Production of Documents to Defendant Blue Cross Blue Shield Association has been forwarded to counsel for Defendant Blue Cross Blue Shield Association by email and U.S. Mail:

Nicholas J. Nesgos
Jennifer Finger
Posternak, Blankstein & Lund, LLP
800 Boylston Street, Prudential Tower
Boston, MA 02199-8004

Anthony F. Shelley
Adam P. Feinberg
Miller & Chevalier Chartered
655 15th Street, NW, Suite 900
Washington, DC

Dated: 8/3, 2007    /s/ Richard B. McNamara

00832607.DOC

11